Richards, J.
The controversy in this action arose over a question as to the priority of liens on a lot of land and dwelling house thereon in the city of Toledo, the plaintiff claiming to have a first lien by way of mortgage, the defendants, George E. Pomeroy and F. M. Fuller, claiming a first lien by way of mortgage and vendor's lien, and the defendants, The Collier-Barnett Company and The Toledo Pulp Plaster Company, claiming liens as materialmen for material supplied in the construction of the dwelling house on said lot.
*138 The title to the lot stood in the name of George E. Pomeroy and F. M. Fuller, and under some arrangement between them and one Harry C. Smith, Smith took possession of the lot, made an excavation for a cellar and commenced the construction of foundation walls preparatory to the erection of a dwelling house. In July, 1917, while Smith had possession, The Toledo Pulp Plaster Company began furnishing material under a contract with him for the construction of said building, and in October, 1917, The Collier-Barnett Company began furnishing material therefor under a like contract. On November 6, 1917, Pomeroy and Fuller conveyed the premises, by warranty deed, to Harry C. Smith, and took from the grantee a mortgage for $1,000 to secure the purchase money, the mortgage reciting that the same was for the purchase money of the premises. On November 8, 1917, Harry C. Smith executed a mortgage on the same premises to the plaintiff, J. C. Golner, for $2,500. The deed from Pomeroy and Fuller to Smith was left for record with the recorder of Lucas county on November 9, 1917, at 2 o’clock, p. m., the mortgage from Smith to Golner was left for record at 2:01 o’clock, p. m., and the purchase money mortgage from Smith to Pomeroy and Fuller was left for record at 2:35 o’clock, p. m., of the same day. At the time of the execution of the. mortgage from Smith to Golner the foundation wall of the cellar of the premises was partly' constructed, and thereafter the mechanics’ liens of The Toledo Pulp Plaster Company and The Collier-Barnett Company were duly perfected. The lien claimed by Pomeroy.and Ful *139 ler amounts to $1,000 and interest, less some trifling payments. The mortgage held by Golner amounts to $2,500 and interest, and the mechanics’ liens held by the other named defendants amount to $500 or $600.
Under this state of facts we are called on to determine the priorities among these several lien-holders, the property not being sufficiently valuable to pay all of them.
At the time the materialmen began furnishing material for the construction of the dwelling house, Smith had no deed for the property, but their liens would attach to such title as he had and would date from the time they furnished the first material, such being the provision of Sections 8310 and 8321, General Code, as amended 103 Ohio Laws, 369. These liens, however, could not attach to an interest which Smith did not have; but when Smith subsequently acquired a complete title 'by conveyance from the owners, the liens of the materialmen would then attach to the title.so acquired, but would be subordinate to the amount remaining due to the vendors, Pomeroy and Fuller. The claim of the vendors to be paid the amount remaining due to them on the purchase price of the premises would necessarily be paramount to the lien of the materialmen, under the doctrine of The Mutual Aid Building & Loan Company v. Gashe, Assignee, et al., 56 Ohio St, 273. There would seem to be little difficulty in arriving at a conclusion that as between the vendors and the materialmen the lien of the vendors would be the prior one.
*140 A more difficult question arises, however, when we come to consider the priority as between the claim of the vendors, Pomeroy and Fuller, and the mortgage of the plaintiff, Golner. While the mortgage of Pomeroy and Fuller was prior in point of time, and was for the purchase money of the premises, it was not left with the recorder for record until after the mortgage held by the plaintiff, Golner, and if the priority of right between these parties is to be determined by the mortgage alone, independent of the vendor’s lien, Golner would, by the terms of Section 8542, General Code, have the first lien, because of the fact that his mortgage was first left for record with the county recorder. We must not, however, lose sight of the fact that Pomeroy and Fuller were the vendors and that the mortgage held by them represented simply the amount of the vendor’s lien held by them, and the mortgage itself recites that fact. The record discloses that Golner had full knowledge of the fact that the amount due to Pomeroy and Fuller was the unpaid portion of the purchase money, and his mortgage was taken with such knowledge. He was very particular to see that the mortgage taken by him should appear first upon the record and insisted upon verifying that fact from an abstract of title, before he advanced any money under his mortgage. The abstract of title which was furnished to him showed that the mortgage held by Pomeroy and Fuller was to secure the unpaid purchase money. The evidence contained in the bill of exceptions fails to show any agreement between Golner and Pomeroy and Fuller that their claim should be subordinate to *141 the claim of Golner. There is some testimony in the record that one Bede, who was ábout to buy the property of Smith, spoke of the fact that Pomeroy and Fuller were to have a second mortgage, but this would be mere hearsay and in no sense binding upon Pomeroy and Fuller, who were not present at the time such statement was made by Bede to Golner, and neither Bede nor Poméroy nor Fuller was called as a witness. The plaintiff himself does not claim to have been present at the time any such agreement was made, if it was made. If the evidence established an agreement of that character there would be substantial reason for contending that the case falls within the rule announced by this court in Walbridge v. Barrett et al., 21 C. C., 522, and to insist that under such agreement the amount of unpaid purchase money should be paid to Golner. But, as we have said, it does not appear that any such agreement was made between the parties.
It is a fundamental law that the vendor’s lien held by Pomeroy and Fuller was not extinguished by their taking a mortgage upon the same property to secure the payment of the amount due. Elliott v. Plattor, 43 Ohio St., 198, 209.
It is insisted on behalf of Golner that he is entitled to protection by virtue of the terms of Section 8321-1, General Code, which was enacted to safeguard the rights of a mortgagee whose address is given in the mortgage and whose mortgage contains a covenant authorizing and empowering the mortgagee to proceed in accordance with that act. This contention is sufficiently answered by the fact that the mortgage taken by *142 Golner contains no such covenant and no address, and is not, therefore, within the terms of that section. By virtue of the terms of Section 8321, General Code, the liens held by the materialmen are entitled to priority over the mortgage held by Golner. See also The West Side Lumber & Manufacturing Co. v. The Lancaster Paper Mill Co. et al., 5 Ohio App., 253.
Under the facts contained in the record, the priorities of liens in this case are fixed and established as follows:
First,, the vendor’s lien held by Pomeroy and Fuller.
Second, the materialmen’s hens held by The Toledo Pulp Plaster Company and The Collier-Barnett Company.
Third, the mortgage held by J. C. Golner.

Decree accordingly.

Kinkade and Chittenden, JJ., concur.