NEW STEELTON LUMBER CO. v.

PIERCE et.

Court of Common Pleas. Franklin Co.

Nos. 113994 to 113998, inc.

Lucas & Keating Columbus for Plaintiff, The Hamilton Parker Fuel & Supply Co. and C. E. Brown.

Reynolds & Voelker, Columbus for The Columbian Bldg. & Ln. Co. defts.

Pretzman & Pretzman, Columbus for J. Elwood Bulen, deft.

Ben Friedman, Columbus for Morris Skilken, deft.

D. O. Reed, Columbus for Lawyer Bros., defts.

J. M. Hengst, Columbus for Smith Bros., defts.

Wayne Fogle, Columbus for Colonial Bldg. Materials Co., defts.

SCARLETT, J.

The court will proceed at once to a discussion of the vital points.

While not pleaded, a vendor's lien was insistently claimed during the trial for J. Elwood Bulen against each of the properties. As this lien would take precedence over all others, it will be first discussed.

The method of procedure as to each sale was as follows: First, a contract of sale between Bulen and Pierce; generally, several weeks later a deed to Pierce and a simultaneous execution of a mortgage by him and by his wife, Cornelia R. Pierce, securing a note for the balance of the purchase price, **upon which appeared the the signature of his wife in addition to his own;** thereafter the deed was recorded and the mortgage to Bulen was not recorded until after a loan had been secured by Pierce at the Columbian Building & Loan Company and its mortgage recorded. **In each case, judgment is sought by Bulen against Cornelia Pierce, as well as against her husband, the purchaser.**

The facts as shown in bold type are determinative of this issue.

Wherever it appears that the vendor took any other collateral security, whether personal or property, he is held thereby to have waived his lien against the property sold.

The taking of a mortgage upon the same property is not a waiver of the vendor's lien, although that mortgage is not executed until a year after the sale and conveyance. (Boss v. Ewing, et al., 17 Ohio 500; Anketal et al., vs. Converse, 17 O. S. 11). However as Judge Hitchcock said in Williams v. Roberts et al, 5 Ohio, 36, 40.

"Although this lien exists in favor of the vendor, yet if it can be shown that he depends upon, takes, or looks to any other individual, collateral security, it ceases, or more porperly speaking, it never attaches.**

In Mayham vs. Combs, 14 O. 429, involving the taking of an additional security on a purchase money note, lots secured by mortgage on the same property, the same conclusion was reached. So, also, in Hert vs. Sala, Administrator, 10 O. A. 52, therein the wife of the purchaser was taken as additional security upon a cognovit note and the mortgage released; in Roberts vs. Kauffman, et al, (Court of Appeals of Cuyahoga County) 5. Ohio Law Abst. 529, where the mortgage notes "were executed not only by the purchaser of the property, but also by her husband," and "in doing so, she waived her vendor's lien", and in Glass Company vs. Amusement Co. (Court of Appeals, Lorain County) and 4 Ohio Law Abst. 716, where the wife of the purchaser also executed the purchase money notes, and judgment was asked against her, as in the present case. In this last case, also, there was a purchase money mortgage, and the mortgagor advanced the idea which has troubled this court somewhat, i. e. that a purchase money mortgage tends to negative the idea of a waiver of the vendor's lien. That Court denied the contention, and no support is to be found for it elsewhere in Ohio reports.

The case of Loan Co. vs. Gaske, et al., 56 O. S. 273 is not in point. In these cases, Bulen did not retain the legal title.

The case of Golner vs. Bede, et al, 11 O. A. 137, 31 O. C. A. 56, involves no question of waiving by the taking of other security, and is therefore not in point on the controlling question here. In the absence of a waiver, it supports the proposition that a vendor's lien is superior to that of material men etc. and of a subsequent mortgage, if the subsequent mortgagee

knew that the vendor's lien was unpaid.

Notwithstanding these precedents, the Court had some doubt arise in his mind as to the sufficiency of the facts here to constitute a waiver. However, the consistent withholding of the vendor's mortgages from record until after construction work had begun and the mortgage loans had been made at the Columbian, together with the fact that they do not carry on their face any description of their nature, tend further to justify the theory of waiver.

Under the Ohio Law, as so established, it seems clear that by taking Cornelia Pierce as an additional maker on the purchase money notes, here involved, Bulen, by presumption of law, at least, looked to other security than the purchaser and the property itself, and thereby waived vendor's liens.

The question of such a lien is therefore removed entirely from the case.

With Vendors liens eliminated, the case of **Rider v. Crobaugh, 100 O. S. 88,** is important in determining the question of these class priorities. It is there held that **sec. 8542, G. C.,** giving mortgages a lien from the date of filing, is still effective, but it must yield to a later section giving mechanics and material men preference over a mortgage filed for record subsequent to the commencement of the improvement."

A purchase money mortgage was involved in that case, but no attention is paid to the fact in the discussion. In the preliminary statement of facts, it is said, "This fact did not appear upon the face of the mortgage and none of the lien claimants had any notice that it was given in part payment of the purchase price until long after the work was done and materials had been furnished."

In lesser degree, the same situation is presented in this case. Combined with the waiver of the vendor's lien, it would seem to eliminate the purchase money nature of Bulen's mortgage lien from consideration. At least, I am unable to clearly see any ground for its further consideration, and counsel submit none that is tenable.

Under our statute, mortgages, unlike deeds, are effective only from the day they are filed for record. A later mortgage takes priority over an earlier mortgage if filed first, although the later mortgagee knew of the existence of the other mortgage. The law rewards the diligent.

It is argued that the Columbian should be estopped from claiming priority because it was negligent in not taking advantage of the construction mortgage sections of the code, as a result of following which, if it first secured the mortgagor's authority to pay directly to contractors and material men through provision of the mortgage itself and then followed a detailed and complicated system of direct disbursements, some or all of these lien claimants would have been paid and improved Bulen's position to that extent.

As far as the record shows, and I understand this is the fact, the Columbian knew nothing of the Bulen mortgages at the time of its several loans. Certainly there was no agreement between them, or representation by the Columbian that these sub-contractors and material men would be paid directly. The Columbian had no obligation to anyone but itself. It had the choice of two methods of procedure and took the easier one. No fraud is claimed.

The Columbian did not in any way represent to Bulen that it would follow the construction mortgage plan, as outlined in the statute. In fact, the mortgage itself is proof that such was not the plan. Bulen did not take the witness stand, and there is a total failure of proof as to any element of estoppel. Bulen had acquired no right to require the Columbian to proceed by a particular method, and when there is no right, there is no remedy.

Bulen and the Columbian therefore stand on mortgage liens, the priority of which is determined by "the time they are delivered to the recorder of the proper county for record" (**Sec. 8542 G. C.**).

As each of the Columbian mortgages was so delivered from two to twelve days prior to the Bulen mortgage on the same property, the former have priority over the latter.

These mortgages are "prior to mechanics and material men's liens, if filed for record before work was begun or material furnished on the improvement." (**Rider v. Crobaugh Supra.**) "If it is reasonably apparent to the mortgagee that the construction, excavation or improvement had not actually and obviously commenced when the mortgage was filed for record, then such mortgage would retain priority."

If however, the construction, etc., had "actually and obviously commenced," on any of these lots before the mortgage in question was filed, all the liens later perfected for labor done or material furnished, on that particular improvement, are preferred, without priority between themselves, to that motgage. This is the right given by the statute (8321 G. C.).

Following this rule, it was stipulated during the trial that the construction liens had priority over the Columbian Mortgage as to Lots 34, 35 and 36, and that the Columbian had priority over the building liens as to Lot 37.. The evidence supported this stipulation, and such priority is hereby recognized. It also follows that the construction liens are prior to Bulen's mortgages on Lots 34, 35 and 36.

It remains then to determine the relative time of construction work and Bulen's mortgage on Lot 37 and of construction work and both mortgages on Lot 33

The mortgagees have established the date of their liens by the public records. It, likewise, is the duty of the lienholders to establish by a preponderance of the evidence the date of their liens, namely, the day when the construction had actually and obviously commenced," if they would base priority thereon.

In reviewing the evidence, the Court has referred not only to his own very copious notes, but also on close points to the stenographer's notes.

There seems to be no dispute as to lot 73, and priority after the Columbian is given to the building liens on Lot 37.

As to Lot 33, the construction lienholders depend entirely upon the confused testimony of Mr. Skilken.

Mr. Skilken has no memorandum and was undoubtedly confused by the mistake as to brick deliveries. His testimony must be disregarded.

Otherwise the evidence is consistent. The building liens are therefore held inferior to the Columbian but superior to the Bulen mortgage.

### VALIDITY OF CONSTRUCTION LIENS.

This branch of the opinion is shortened by the admission, at least by the Columbian, of the validity of all the New Steelton Lumber Company liens, except for the claim of estoppel, as to $1200.00 on lot 34, and the related liens of the Hamilton Parker Fuel & Supply Company and C. E. Brown's liens on lots 36 and 37. The claims were proved; the Court sees no defects therein, and no one has attempted to point out any. As the original Fuel Company lien on each lot is for material furnished Brown, the amount of which is included in his claim, the Fuel Company as assignee of Brown's claim, is allowed the amount of that lien only on each lot.

The Court holds that the objections by the Columbian to $1200.00 of the Lumber Company's lien on lot 34 does not affect the validity of that lien. Upon the weight of the evidence I find that the $1200.00 was never paid by Pierce to the Lumber Company. Even if a check was given, and afterwards lost or returned for lack of funds, as in other instances was the case, that would not constitute payment so as to reduce the amount of the claim. A check is merely a conditional order of payment. It is, however, found that estoppel, as herein before defined, exists, which prevents the Lumber Company from claiming priority over the Columbian. The receipt for $1200.00 was regularly prepared and executed by an authorized officer of the company, and, therefore, was the statement and act of the company. It is charged with the knowledge that Pierce was obtaining his money for construction on these Columbian mortgages, the first of which was recorded over three months before the receipt in question, and that such receipts were commonly used by contractors to withdraw money on the construction mortgages. To say the least, the Company was negligent in its care of the receipts after execution, and in its failure either to discover its loss or to notify the Columbian. The Columbian acted upon this receipt to its injury. The negligent person, as between the two, must therefore suffer the loss. However, this estoppel does not operate to the benefit of anyone, who did not act upon the receipt. This $1200.00 part of the lien may be satisfied only after the Columbian's lien has been paid in full.

Morris Skilken filed liens against lots 33, 34, 35 and 36 for a total balance of $722.40 for brick work, chimney and mantel in each house.

His last construction work was completed in June. A bill made out by him August 15, shows that he was then claiming the full contract price. On September 12, three months after he completed his construction work, a receiver was appointed. On September 30 he claims that he finished his work by cleaning the mortar from the brick. There was no corroboration of this claim, and direct impeachment was offered to the effect that mortar and plaster, the plastering having been done months previously, still remained on the brick.

The Court has reached the conclusion that if such work was done, of the value of $72.00, he says, it was a mere subterfuge for the purpose of reviving a right of lien, which at the time was over one month dead. Further the construction work had been completed in June, and there was nothing to give notice that the brick contractor had not completed his work. The witness once referred to his work as completed in June.

He did not file his claim until November 16, over two months after a receiver was appointed, and five months after the actual work was completed. It is apparent that Skilken, who has done a lot of work for Pierce, did not want to press his claim. He slept on his rights, and certainly should not be rewarded at the expense of these mortgagees, who perfected their liens long before.

The case of **Park vs Heater Co., 29 O C. A. 253**, is not in point. There part of the heating apparatus itself was not installed until some months after the other parts. There was no question on the facts, and the absence of the registers gave notice to all that the work was not completed.

The case of **Kerschner vs Szabo, 5 Ohio Law Abst. 602**, (Court of Appeals, Lorain Co.) is, however, in point, finding work done under similar conditions a mere subterfuge and not effectve to extend the time.

It is apparent that his liens should be, and they are hereby, held invalid.

There is also, the additional reason that his preliminary affidavit did not contain the certificate of his material man or men as required by the mandatory provisions of the statute upon which his lien right is founded. No names are given, and the affidavit merely contains the statement that material men were paid in full. The statute provides that the sub-contractor shall have no right of action or lien until he shall have furnished such statement.

It was held in the case of **The Kinear Co., 14 O L R 531**, by Judge Sater that the furnishing of such certificates is a condition precedent to the perfection of the lien, and the fact that such material men or sub-contractors are paid in full is no excuse. This opinion was approved by our Supreme Court in **Park Co. v Warren Home Development Company, 109 O. S. 358, 372-73**.

LAWYER BROS., liens.

Because of the statutory requirements as

to the preliminary affidavit, and the mandatory nature thereof, these liens must fall.

Elmer Lawyer testified that he did not consult his lawyer and did not even know that a preliminary affidavit was necessary. No attempt was made to prepare one or to serve it at any time. His counsel attempt to defend on the ground that at a certain time in September about the expiration of their 60 day limit, the work having been completed July 18, Pierce could not have been found in the county, if the attempt had been made.

Lawyer testified that he did not know whether Pierce was in Columbus or not during the period in question; that he made no attempt to leave a preliminary affidavit any place or to mail it; that all he did was to go to the Receiver's office several mornings and waited for Pierce, and also called at his house. He saw Pierce on October 8, but said nothing about a preliminary affidavit, because he knew nothing.

It seems that Pierce became hard to find in September. H. D. Wilson saw him at his house a week or ten days before September 12. W. W. Metcalf saw him in an auto in Columbus on September 12. The only inference is that he was not at his house or office much, if any, during this period. Outside the record, it is said that he was spending his time at the races at Grove City in this county.

It cannot be said from this evidence that Pierce could not be found within the county. The claimant, to escape the necessity of furnishing the preliminary affidavit, must show that the owner could not be found within the county. This implies an effort in good faith at the time the claimant has in mind the question of the preliminary affidavit. Certainly it is not sufficient to seize upon a short period when the owner happened to be out of the county, to say: "Well, I could not have served him during that time".

Lawyer had 50 days after his money became due in which such service could have been made in person, or afterwards on October 8. Unless he had definite proof that he was out of the county, it was his duty to use such agencies as are recognized for the purpose. **Sec. 8333-3** provides that "service may be made by the Sheriff, and also that proof the affidavit was mailed by **registered** mail to the last known residence of such person, etc., shall be **conclusive proof of service.**"

Certainly one thing at least is conclusive: Either the receiver was an agent under **G C 8313**, and, being an agent within the county, should have been served with the preliminary affidavit, or else he was not an agent within **G C 8315**, and the service of the affidavit for lien was, therefore, not properly made. In the horns of this dilemma the case must fall, no notice being posted on the premises.

The Lawyer Brothers liens must therefore be held invalid.

SMITH BROTHERS' lien.

I see no substantial objection to this lien. The claimant proceeded carefully and without delay to perfect his claim. He served his preliminary affidavit upon Pierce in August, and twice attempted to get registered mail service of the lien affidavit.

It is to be noted that **G. C. 8323-3** provides that proof that the affidavit was mailed to the last known residence of such person shall be **conclusive proof of service.** Up to the time the registered letter was returned, the claimant had conclusive proof of service. He was not dilatory, therefore, in not posting a copy upon the premises until that letter was returned, which was only two days after the extra ten days provided by statue for posting.

This lien, is therefore sustained but is admittedly inferior to the mortgage of the Columbian.

(COLONIAL BUILDING MATERIALS CO.)

This lien fails because no copy of the lien affidavit was served upon the owner or his agent, and the statutory alternative of mailing by registered mail was not followed. Proof of actual delivery is necessary, unless registration is resorted to. Ordinary mail complies with neither requirement. No copy was posted on the premises.

As the liens held valid are undisputed as to amount, counsel will have no trouble in drawing the entry in accordance with the above finding. The only doubt, still remaining in the Court's mind, relates to the waiver of the vendor's lien, but the Court believes that the only conclusion consistent with the Ohio precedents has been reached.