THE KNOLLMAN LUMBER CO., APPELLEE, *v.* HILLEN-
BRAND ET AL., APPELLANTS.

THE KNOLLMAN LUMBER CO., APPELLANT, *v.* HILLEN-
BRAND ET AL., APPELLEES.

(Decided July 1, 1940.)

*Messrs. Davies, Hoover & Beall,* for The Knollman Lumber Company.

*Mr. Andrew C. Gallagher,* for Jacob S. Herman, trustee in bankruptcy for Fred G. Hillenbrand.

*Mr. Wm. R. Collins* and *Mr. David F. Naylor,* for The Liberal Savings & Loan Company.

*Mr. Edwin G. Becker* and *Mr. Alvin M. Loeb,* for Wm. B. Lane and Gertrude Lane.

*Mr. Walter K. Sibbald,* for Charles F. Lenhart, Inc.

*Mr. H. C. Bolsinger,* for H. Cassini Tile Company.

*Messrs. Cobb, Schott, Tieman & Neyer,* for Williamson Heater Company.

*Mr. Wm. H. Fry,* for Brockamp Building Material Company.

MATTHEWS, J.  These appeals on questions of law present a controversy between the owners, a mortgagee, and various materialmen, arising out of the construction of a residence.

The owners (Lanes) entered into a contract with

one Hillenbrand, whereby in consideration of the construction of the residence by Hillenbrand the owners agreed to pay $6,775, upon the following terms:

"Six hundred dollars ($600) with the signing of this contract, and an additional one hundred seventy-five dollars ($175) within 60 days from the deed of this contract and a construction loan from the liberal association which has been approved on my plans and specifications, and shall pay said Lone Star Construction from the proceeds of said residence in accordance with said plans and specifications."

After the excavation for the building had been begun, the owner executed a mortgage to The Liberal Savings & Loan Company, to secure the payment of a note for $6,000, and this mortgage was duly recorded. The work that had been done at that time was such that the mortgagee must be taken to have had notice of it. In the mortgage was a recital that: "This mortgage is given to improve the premises herein described. The mortgagors hereby consent and agree with the mortgagee that the fund secured by this mortgage may be paid out by the mortgagee as provided in Section 8321-1 of the General Code of Ohio," and also "The grantee is authorized and empowered to do all things provided to be done by a mortgagee under Section 8321-1 of the General Code, and under the act of the Legislature passed May 27, 1915, 106 Ohio Laws, pages 522-534, and any amendments or supplements thereto."

In addition to these provisions in the mortgage, the owner signed several authorizations, in which the amount and name of payee were left blank, to the mortgagee to make payments from this mortgage fund.

As work progressed, disbursements were made by the mortgagee. These disbursements were made after an inspection of the work and in proportion to the work done to the total, and in accordance with sworn statements, required by Sections 8312 and 8313, General Code, averring that the work and material de-

scribed were actually applied to improve the mortgaged real estate. There is no evidence in the record tending to disprove this. The most that the record shows is that the amount expended by the mortgagee and owner, plus the amount of the unpaid liens, exceeds the contract price, $6,775. A total sum of $5,583.47 was thus disbursed from this mortgage fund. Of this total $3,205.90 was paid directly to the head contractor (Hillenbrand) for work and material furnished by him, and the balance to subcontractors and materialmen, all in accordance with sworn statements, regular in form.

Payments were made by the owners directly to materialmen and subcontractors slightly in excess of the difference between the contract price and the amounts disbursed by the mortgagee, so that the owners are not indebted to the head contractor in any amount.

In no case was any certificate filed by the owner with the mortgagee that any payments to be made were required to meet pay rolls.

No notice such as is authorized by Section 8313, General Code, was furnished to the owner.

The trial court concluded as a matter of law that the mortgagee was authorized by Section 8321-1, General Code, to make disbursements to meet pay rolls only, and this only when the owner had certified to it that such disbursement was necessary for that purpose, and, that, therefore, it could claim no priority over the liens of subcontractors and materialmen, for materials and labor furnished in the construction of the house, which liens had been perfected in accordance with Section 8310 *et seq.*, General Code. From the judgments, giving effect to this conclusion, these appeals were taken. Other details appear in the evidence, but as the cases depend upon the construction of Section 8321-1, General Code, as applied to the terms of this construction mortgage, we do not deem it necessary to mention them.

It is argued that this mortgage provided for a cash

payment of $600, and that no further payments were due until completion of the building, and, that, therefore, all payments other than the payment of $600 were premature and not in conformity to the terms of the mortgage, and for that reason alone the mortgagee is not entitled to the priority to which it would otherwise be entitled. We do not accept this construction of the terms of the mortgage relating to payment. While it is a rule of construction that when a contract provides for the doing of an act in consideration of the doing of another act, the implication is that the performance is intended to be concurrent, that rule is entirely inapplicable here to postpone payment until the completion of the work. It would nullify the purpose of the parties. The owners gave their note and mortgage and thereby obligated themselves for the very purpose of providing a fund from which payments could be made as the work progressed. It is a construction mortgage and that fact alone is sufficient to negative the idea of withholding payment until the building had been completed, and this was in compliance with the contract between the owner and the head contractor. There is no provision in the mortgage that would justify others dealing with the head contractor in believing that payments would be postponed until completion of the building. We, therefore, hold that this provision in the mortgage does not invalidate the lien or affect its priority in any particular.

It is asserted that notwithstanding all disbursements were made to contractors, subcontractors, materialmen, and laborers, the priority of the mortgage lien must fail as to all payments except those made to meet unpaid pay rolls, duly and formally certified by the owner to the mortgagee, because Section 8321-1, General Code, dedicates the entire mortgage debt to that purpose. If that is what the General Assembly meant, it seems to us to be an instrument crudely

fashioned to facilitate building construction. Let us examine this section.

By its first paragraph, the section clearly provides that ''the lien of a mortgage given in whole or in part to improve real estate, or to pay off prior encumbrances thereon, or both, the proceeds of which are actually used in such improvement in the manner contemplated in Sections 8310 and 8311 of the General Code, * * * and which mortgage contains therein * * * a covenant between the mortgagor and mortgagee authorizing and empowering the mortgagee to do all things in this act provided by said mortgagee to be done, shall be prior to all mechanics', materialmen's and similar liens and all liens provided for in this chapter that are filed for record after said improvement mortgage is filed for record, to the extent that the proceeds thereof are used and applied for the purposes aforesaid.''

So far there would seem to be no ambiguity. It clearly states that the construction mortgage shall be a prior lien to the extent that the proceeds are actually used in the improvement of the real estate. There is no limitation here of the mode or manner of using the proceeds in the improvement, such as to the payment of pay rolls alone. If there is any such limitation, it must be found elsewhere in the section.

The second paragraph of the section empowers laborers and materialmen to protect themselves by notifying the mortgagee of their claims.

The third paragraph creates a moratorium of 15 days in which the mortgagee is not required to disburse any of the proceeds and to decide whether he wants to go forward with the loan and ends with this provision: ''but if said mortgagee elects to complete said loan, he shall in order to obtain the priority hereinbefore set forth, distribute said mortgage fund, in the following order * * * :''

It should be observed here that there is disclosed in

the foregoing language no intent to limit the purpose as stated in the first paragraph to give the mortgagee priority as to all the proceeds actually used in the improvement of the real estate. The only purpose disclosed by this provision of paragraph three is to direct the order of the disbursements. And this provision is followed by an order of disposition and it is in the language of the third class that it is claimed is found the restriction on the purpose for which the mortgage fund can be used and still preserve the priority. We quote this provision:

"Such mortgagee may from time to time pay out on the owner's order, directly to contractors or subcontractors, or to the owner himself if he is his own contractor, such sums as said owner may certify to be necessary to meet and pay labor pay-rolls for said improvement."

Now what does this mean? In construing it, we must bear in mind that the General Assembly had already said in the first paragraph that the priority should exist for that part of the fund that was actually used in the improvement. And with this in mind, we think it reasonably clear that the provisions relating to this third class were inserted as a protection against fraud, and to insure that the disbursement would be for the use upon which the priority was predicated, that is, actual use in the improvement. If the owner is not his own contractor, his order upon the mortgagee to pay to the contractor or subcontractor is an assurance from one vitally interested in vouching for the fact that the contractor or subcontractor is entitled to the extent of the order for material and labor actually used in the improvement. There could be no purpose whatever in limiting payments to contractors and subcontractors to sums needed to meet pay rolls, and to hold that the owner should so certify would impute to the General Assembly an intent to require a certificate from one

who in the ordinary course would know nothing about it.

But if the owner is his own contractor, some greater assurance is required that the disbursement will actually be applied, and, for that reason, the owner is required to certify that the money is needed to meet pay rolls for labor, and when he is his own contractor it is reasonable to presume that he would know the facts to which he certifies.

The fourth class of disbursements is to materialmen and laborers who have notified the mortgagee of their claims, as provided in the second paragraph of the section. These payments may be made on the order of the owner without further verification.

We believe these are the only provisions of the section necessary to consider in determining the order of priority in this case. If we are correct in our interpretation, the mortgagee is entitled to priority for all sums actually used in the improvement. We are fortified in this conclusion by the further provisions in Section 8321-1, General Code, that:

"Nothing in this chapter contained shall require the mortgagee to ascertain by affidavit or otherwise the respective claims of contractors, subcontractors, laborers or materialmen, or to determine priorities among lien claimants * * *. The mortgagee shall not be responsible for a mistake of the owner in determining priorities, or for any failure of the payee to properly distribute funds paid on the written order of the owner, * * * provisions * * * shall be liberally construed in favor of such mortgagees, a substantial compliance by such mortgagees being sufficient."

Of course, notwithstanding all these provisions, if a fraudulent conspiracy existed between the owner and the mortgagee to defraud those whose labor and material went into the improvement, the priority of the mortgagee would be destroyed, but there is no claim of fraud by either of them in this case.

It is provided by Sections 8312 and 8313, General Code, that the owner who complies with the provisions thereof, with reference to disbursements, shall not be liable to subcontractors, materialmen or laborers for a greater amount than he contracted to pay the original contractor. It appears that there is owing of this amount the sum of $724.83. This amount is due from the owner to the lien holders and was ordered paid to the clerk of the courts. The judgments of the Common Pleas Court are affirmed in that respect.

The judgments of the Common Pleas Court will be modified so as to preserve the priority of the mortgage lien for the full amount disbursed by it. As there appears to be a small amount still undistributed, that amount should be ordered paid by the mortgagee to the unpaid claimants *pro rata,* or to the clerk of the Common Pleas Court for that purpose.

As the plaintiff and the other claimants had causes of action against the owners and as it appears that the mortgagee complied with the statute and its contract with the owners, the judgments must be modified by assessing the costs against the owners.

As modified, the judgments are affirmed, and the causes remanded for further proceedings according to law.

*Judgments modified and affirmed as modified.*

HAMILTON, P. J., and ROSS, J., concur.