HILLSDALE LOAN & BLDG. CO. *v.* CREAGER ET AL.

(No. 33671—Decided August 12, 1965.)

*Mr. Edwin C. Heilker,* for plaintiff, The Hillsdale Loan & Building Company.

*Mr. John D. Erhardt, Mr. Lawrence W. Carlier* and *Messrs. Nichols, Speidel & Nichols,* for the lien holders.

NICHOLS, J.   This case is one to foreclose a real estate mortgage and to determine rights and priorities of certain lien holders and mortgage holders.

There are certain facts that are not in dispute and they basically are as follows: The plaintiff is a legally organized building and loan association and made a real estate loan on the real estate described in the petition which was filed for record with the Recorder of Clermont County, Ohio, on June 3, 1964.   This mortgage contains all of the formal requirements as are provided by Section 1311.14, Revised Code, and therefore, to the extent that payments were made in accordance with the provisions of this section, it is prior to all subsequently filed mechanics' or contractors' liens.

It is not disputed that, as of the date of the filing of this mortgage, work had been started on the building. The testimony of the defendant Rapp, of the Owensville Electric Service, was that his first work was done on May 27th and that the building was under construction at that time.

The liens of all properly filed lien holders did, therefore, predate the lien of the mortgage, except so far as it is protected by the provisions of Section 1311.14, Revised Code.

The defendant Frank Murphy, Jr., has a valid and existing mortgage on the premises which was filed for record on November 20, 1964, and is subsequent in priority to both the mortgage of the plaintiff and the valid lienholders and there is due on said mortgage, the sum of $5,000 with interest at six per cent per annum from February 19, 1964.

The defendant The Overhead Door Company of Cincinnati has a valid lien on the premises by virtue of a judgment and certificate of judgment against the defendant Donald Creager from the 6th day of March, 1965, in the amount of $1,005.00 with interest at six per cent per annum from the 6th day of March, 1965.

With these undisputed facts in mind, the court comes on to consider the priorities as between the plaintiff, The Hillsdale Loan & Building Company, and those lien holders who have filed and perfected their mechanic's liens.

The distribution of the proceeds of the loan, which was originally in the sum of $25,000, was actually made in three installments, referred to as "draws" and these draws were made after the filing with the plaintiff of affidavits by Donald Creager, along with supporting certificates and affidavits of other contractors. These affidavits were made on forms set forth and described in Section 1311.04, Revised Code. This practice seems to be quite general among the building & loan associations in the Cincinnati territory, although these affidavits of the original contractor, subcontractor and certificates of material men, have absolutely nothing to do with the requirements of Section 1311.-14, Revised Code, relative to the distribution of the proceeds of a construction loan. The affidavits and certificates are for the benefit of the owner of the land and are to protect him in ascertaining any amounts that might be due under his general contract on material and labor bills. This section does provide

also that the mortgagee may demand in writing from any contractor or subcontractor, and provides for a cash forfeiture in the event that such statement is not given.

According to the evidence presented in this case and the affidavits filed, Donald Creager is the owner of the real estate and the owner of "D-C Modern Homes," who is referred to as the original contractor.

The first distribution or draw was made on June 2, 1964, at which time six checks were drawn; one to Ray Davis, listed as a subcontractor, for sand and gravel, in the amount of $213.60; one to Bud Day, listed as a plumber; one to the Plainville Concrete Company, listed as material men and two checks which are not contested, for the expenses of the loan and the attorney fees. On the same day, however, there was a check payable to Donald Creager, in the sum of $5,935.64. He is listed under the heading of subcontractor on the affidavit signed by himself. There is no statement on this affidavit, nor is there any statement any place in the record, that this money was used in the construction of the building, or for the payment of material or labor to go into the building. As a matter of fact, on the affidavit, signed by Mr. Creager, it states at that time, that "all labor has been paid in full." The second draw was made on June 29, 1964, pursuant to an affidavit again signed by Mr. Creager, which lists Donald Creager as a subcontractor furnishing labor and material, setting out the amount due to be $3,130.07. Attached to this, he signed another separate affidavit as a subcontractor in which he states, "all material taken from stock" and that "all laborers have been paid in full." There were attached to this affidavit, certificates of material men, Fred Zeller & Sons for building materials, $738.84; Valley Homes, Inc. for a house package (wherein it is stated that the material was for a new residence; whereas, as a matter of fact, the building under construction was a commercial building), $3,090; and to the Plainville Concrete Corp. for ready mix concrete in the amount of $1698.16. Checks dated June 30, 1964 were made for all of these amounts, including a check to Donald Creager in the sum of $3,130.07. The last draw or affidavit was made on July 30, 1964, in which the only person mentioned is Don Creager, in which he claimed $2,000 listing himself in the affidavit as a subcontractor and stated that the money was for

labor. The affidavit stated there were no materials furnished and that all labor is paid in full. It will be noted that three checks were paid to Donald Creager individually, who was the owner of the property, totaling $11,065.71. The court finds that these payments were not made in accordance with the provisions of Section 1311.14, Revised Code, and therefore, to the extent of $11,065.71, the distribution from the proceeds of the construction loan does not warrant priority over valid and properly filed mechanics' liens.

Section 1311.14, Revised Code, provides in part, "* * * the proceeds of which are actually used in such improvement in the manner contemplated in Sections 1311.02 and 1311.03 of the Revised Code, or to pay off prior encumbrances on both, * * *" The section goes on to say that it shall be prior to all mechanic's or materialmen's or similar liens which are filed for record after the filing of the construction mortgage to the extent that the proceeds thereof are used and applied for the purpose of and pursuant to this section. The section then sets out seven separate methods by which distribution must or may be made. Nowhere in these seven divisions [(A) through (G)] of Section 1311.14, Revised Code, is there any permission or authorization to pay the proceeds of the loan to the owner of the property, except where it provides in (G) that they may pay the balance to the owner after the improvement has been completed. The section then provides that if said mortgagee pays out said funds otherwise than is provided in this section, the lien of such mortgage to the extent that funds had been paid out, not in conformity to this section, shall be subsequent to the liens of the contractors, subcontractors, material men and laborers who have perfected their respective liens.

There are many cases in Ohio interpreting the statute and determining rights as between lien holders and companies making construction loans. Numerous Common Pleas and Court of Appeals cases have reported opinions in respect to construction of these statutes. One of the earlier opinions was from the Common Pleas Court of Summit County, *Ulmer* v. *Portage Constr. & Finance Co.* (1923), 26 N. P. (N. S.) 257. Another Court of Common Pleas opinion from Hamilton County is *Simpson* v. *Lewis* (1925), 3 Ohio Law Abs. 481. A later Common Pleas Court opinion, also from Hamilton County, is *Con-*

*necticut Gen. Life Ins. Co.* v. *Birzer Bldg. Co.* (1950), 61 Ohio Law Abs. 470. All of these cases throw some light on the case at bar but none are directly in point. A comprehensive annotation is set out in 80 A. L. R. 2d 179-260. The court has gone over the citations in this annotation and has given them consideration in arriving at a conclusion in this case.

There was specifically called to the court's attention the case of *Knollman Lumber Co.* v. *Hillebrand* (1940), 64 Ohio App. 549. This case was decided in 1940 by the Court of Appeals of the First Appellate District and this court is bound by its decision, where there is no Supreme Court decision giving a contrary point of view. While this court did not agree with the reasoning of the Court of Appeals, primarily on the basis that if it is literally followed, then it adopts a policy of the construction of a statute wherein a general principle is set out, and where it is established that the proceeds of the loan were actually used in such improvement, it made no difference as to how it was distributed and the mortgagee was not required to pay any attention to the seven specified methods and priorities of making distribution. This would seem to me to do violence to the actual wording of the statute, but more important, if this was done, it would mean, in almost every case where there is a deficiency of funds, that the mortgagee could favor one material man or contractor above the other and in most instances, it would mean that the party who dug the basement or furnished the blocks for the foundation, would always be paid off 100 cents on the dollar; whereas, the carpenter who did the finishing work or the roofer who did the roofing work would not be paid for his work or the material. This is in direct conflict with the theory of the mechanic's lien law, which provides that each laborer or material man should stand on an equal priority. This court, however, sees a very marked distinction between the facts of the *Knollman case* and the case at bar and it is set forth in the third headnote of the *Knollman case* where it is stated, "* * * It is only where the owner is his own contractor and payments are made to him that payments must be so limited." The "so limited" refers to the provision of division (C) of Section 1311.14, Revised Code, which provides that payments may be made "to the owner himself if he is his own contractor, such sums as said owner certifies to be necessary to meet and pay

labor payrolls for such improvement.'' It will be noted that the *Knollman case* states that where the owner has no general contractor, payments can be made to him only for the purpose of making labor payrolls and in distinction to the present case, in the *Knollman case,* there was a general contractor with a contract to build a building for a specified amount of money; whereas, in this case, there was no such contractor, the laborers and material men were certainly not put on notice of the limitation of an amount of a contract, and regardless of the total number of liens filed, they were still authorized under the lien law, to file and to perfect their liens.

Another case by the Court of Appeals, First District of Ohio, is *First Federal Savings & Loan Assn.* v. *Robbins* (1939), 34 Ohio Law Abs. 249. It holds that ''* * * where it is shown conclusively that all of the proceeds of the mortgage were paid out by the attorney for the mortgagee directly to laborers and materialmen, and partly through the mortgagor, the owner of the property,'' the construction mortgage is ahead of subsequently filed mechanics' liens.

Another case in the Court of Appeals, First District, was *First Federal Savings & Loan Assn.* v. *Ledermeier* (1942), 36 Ohio Law Abs. 143. There, even though there was no general contractor, where the proceeds of the sale of the property on foreclosure was less than the amount that was paid out from mortgage funds to laborers, materialmen and contractors by going directly into the project, it was held unnecessary to determine the questions of priority as it was then a moot question.

The various lienholders have filed answers and have established their claims and through their testimony and their exhibits, have, to the satisfaction of the court, established their compliance with the provisions of the mechanic's lien law.

There are questions in evidence raised as to several of these liens. One of them in respect to that of Fred Zeller & Sons. It was established that originally, they had included in their account certain materials that actually were not delivered to this particular site and had, in fact, reported to the Building and Loan, an amount due of something over $1400; whereas, as a matter of fact, there was only $1,022.24 due on material furnished for this job. This amount is the amount set forth in

the lien that was filed, not set forth in their answer and there was direct testimony from the president of the company that all of the material representing the claim of $1,022.24 actually went into the building.

There was a question raised in connection with the Owensville Feed and Building Supply Company, that they furnished a certificate showing $998.76 due; the first one being dated August 31, 1964 and a similar one October 15, 1964; whereas, the lien was in the amount of $1,021.30 and the statement in the petition is that the last material was furnished on September 3, 1964. This was submitted with the argument that inasmuch as there was no change in the amount from August 31 to October 15, 1964, no additional material was furnished. The exhibit number 6 shows some definite erasures or changes on the certificate dated October 15th in the amount shown and this testimony is in the opinion of the court, not sufficient to counteract the direct and positive statement of the representative of the Owensville Feed and Building Supply Co. that materials were furnished on September 2 and 3 to make up the difference. This testimony is substantiated by delivery tickets on those dates attached to the affidavits and shown in this Defendant's Exhibit A.

Similar questions were raised as to the other defendants, none of which in the court's opinion, in any way, affected or successfully contradicted the direct testimony of each of these defendants as to the dates of the last material furnished or from the fact that all of the material furnished and shown by their answers, have been properly proven.

There was presented in evidence the exhibits of the filing of the affidavits and the notices being sent to the proper persons and while no claim was made that there was any default or lack of proper procedure in this matter, the court finds, as a matter of fact, that all of said liens as shown in the petition and answers are properly filed and are valid and existing liens in the amounts set forth in their respective answers.

There was a question also raised to the fact that the lienholders filed answers rather than answers and cross-petitions. The court holds that it is necessary to determine the rights, amounts due and the priorities of the respective lienholders and where these lienholders are made parties to the suit, it is

the right and duty of the court to find for or against them and to find their priorities and it can do so on their answers and it is not necessary for them to file cross petitions.

The petition asks for judgment in the amount of $20,153.88 with interest from March 20, 1965. The evidence discloses that at the time of the distribution in June and July, 1964, a total of $19,420.93 was paid by the Building & Loan Co. Of this amount, under the separate checks shown and submitted in evidence, a total of $8,337.22 was made to persons other than the owner, Donald Creager, and the court holds and finds that by virtue of said payments the plaintiff has, after the payment of taxes and court costs, a first and best lien on the property described in the petition and is entitled to be paid that sum out of the proceeds of the loan.

The court further finds that the defendants Adams Heating Co., Fred Zeller & Sons, Owensville Electric Service, Owensville Feed & Supply Co. and Nickoson Sink Top Co. have valid and existing liens in the amounts set forth in their respective answers and these liens are of equal priority and second to the claim of the plaintiff. Thereafter, the plaintiff is entitled to the claim of $11,065.71 representing the amounts which the court finds were paid out directly to Donald Creager and not in conformity with the construction loan law and next, the claim of the defendant Frank Murphy, Jr., in the amount of $5,000 and thereafter and finally the judgment claim of Overhead Door Company in the amount of $1,040.75.

All of said claims are entitled to interest to be calculated at the rate of six per cent (6%) from the dates claimed in their respective pleadings.

*Judgment accordingly.*