The Wayne Building & Loan Co. of Wooster, Ohio, Appellee, v. Yarborough et al.; The Falls Lumber Co. et al., Appellants. (Three cases.)

(Nos. 40533, 40534 and 40535—Decided July 26, 1967.)

*Messrs. Laybourne, McClenathen, Zurz & Tuccillo* and *Mr. Paul C. Laybourne*, for appellee.

*Messrs. Amer, Cunningham, Cunningham, Brennan & Miller*, for appellants Donald J. and Gloria A. Lantz.

*Messrs. Buckingham, Doolittle & Burroughs* and *Mr. John M. Glenn*, for appellant The Falls Lumber Company.

*Messrs. Roetzel, Hunsicker & Michaels* and *Mr. Andrew J. Michaels*, for appellant Sauter Development Company.

O'NEILL, J. The sole question before this court on these appeals is the relative priority of the various liens which the Court of Appeals found to be valid and existing liens on lot No. 150, Silver Crest Estates, the subject property in this action, with the exception that the validity as well as the priority of the Lantzes' vendee's lien appears to be challenged by Wayne.

The first set of questions herein relates to the existence and priority of the Lantzes' claimed equitable vendee's lien.

The Lantzes' August 28 contract to purchase the subject premises from Yarborough was not an installment land contract of the type referred to in Section 317.08(B)(2), Revised Code, and required to be recorded by Section 5301.25, Revised Code. It was rather an agreement to purchase real estate upon completion of a house thereon, the balance ($22,000) of the purchase price to be financed by the buyer. Owing apparently to Yarborough's financial difficulties, the house was partially erected but never completed, and Yarborough's filing for record of a deed to the subject premises in favor of the Lantzes, on or about March 12, 1964, has never been accepted by the Lantzes, which is their right. They were not obligated under the contract to accept a deed before completion, and, when it became apparent that Yarborough would be unable to complete the house, he was in default, and no obligation on the part of the Lantzes to accept a deed ever arose. The contract appears to have been a valid and binding contract and no one has contended in this court that it is not.

It has often been held by this court that the vendee under an executory contract for the sale and purchase of real property has an equitable lien or estate in the land in the amount paid on the purchase price. *Cleveland Trust Co.* v. *Bouse* (1955), 163 Ohio St. 392, 127 N. E. 2d 7; *Coggshall* v. *Marine Bank Co.* (1900), 63 Ohio St. 88, 57 N. E. 1086; *Jaeger* v. *Hardy* (1891), 48 Ohio St. 335, 27 N. E. 863; *Ranney* v. *Hardy* (1885), 43 Ohio St. 157, 1 N. E. 523; *Butcher* v. *Kagey Lumber Co.* (1955), 164 Ohio St. 85, 128 N. E. 2d 54 (dictum); *Massie's Heirs* v. *Donaldson* (1838), 8 Ohio 377 (dictum). This is in accord with the general rule in other jurisdictions. Annotation, 33 A. L. R. 2d 1384, supplementing 45 A. L. R. 352; 55 American Jurisprudence 941, Vendor and Purchaser, Section 458. The equitable vendee's lien

does not depend upon the possession of the vendee. Such possession is referred to in some of the cited cases only to establish notice of the vendee's rights on the part of the mortgagee, but it is not the exclusive means of such notice.

Although the parties have not briefed or argued the point, this court feels obligated to add that there is no legal distinction between the case where the vendor contracts to sell land to which he already has title, and the case herein, where the vendor did not have title to the land at the time of the contract, but either misrepresented that he had title or represented that he could and would obtain it, *and he subsequently did obtain title.* At least one case has been found where an equitable vendee's lien has been applied in the latter situation, without any such distinction being made. *Dolliver* v. *Elmer* (1935), 220 Iowa 348, 260 N. W. 85. See annotation, 33 A. L. R. 2d 1384, 1386, Section 1. Cf. *Lee* v. *American Trust & Savings Bank of Lowden* (1930), 209 Iowa 609, 228 N. W. 570, relied on in the *Dolliver case.* Certainly the vendor, making such a contract and accepting the benefits thereof, would be estopped to deny the validity and effect of the contract, if he subsequently acquired title to the subject land. See 20 Ohio Jurisprudence 2d 509, 513 and 522, Estoppel, Sections 44, 47 and 55; 54 Ohio Jurisprudence 2d 563 and 564, Vendor and Purchaser, Sections 21 and 23. And it would only seem to be giving full effect to the vendee's rights under the contract to recognize, upon the vendor's breach, the vendee's equitable lien on the subject premises arising when the vendor acquires the title, as security for amounts paid by the vendee under the contract.

It is an elementary rule of property that an equitable estate in lands continues until cut off by the rights of a bona fide purchaser, absent the influence of a statute, such as a recording act. *Shaker Corlett Land Co.* v. *Cleveland* (1942), 139 Ohio St. 536, 41 N. E. 2d 243, paragraph three of the syllabus; 55 American Jurisprudence 1048 and 1050, Vendor and Purchaser, Sections 655 and 657. The real estate purchase agreement herein not being recordable, the rights of the parties must be established by general principles of law and equity.

There seems to be little question that a mortgagee is entitled to the protection of a bona fide purchaser, if he gives value without notice of prior equities. 36 American Jurisprudence

794 and 795, Mortgages, Sections 205 and 206; *Minor* v. *Wallace* (1841), 10 Ohio 403, 405; *Oviatt* v. *Brown* (1846), 14 Ohio 285; 37 Ohio Jurisprudence 2d 336 and 340, Mortgages, Sections 153 and 156. The substantial point of dispute between Wayne and the Lantzes is whether the former recorded and gave value under its mortgage with notice of the latter's equity. The Court of Common Pleas below declared that, when Yarborough told Wayne in negotiating for a construction loan that "the lot is sold," he was merely representing that he had a buyer for the lot when a home was constructed thereon. The trial court then held that the Lantzes had failed "to show any knowledge of an outstanding contract of the vendee upon the part of the mortgagee in this case."

The Court of Appeals, in its findings of fact and conclusions of law, differed with the trial court's findings and holding. The Court of Appeals' findings of fact state that Yarborough told Wayne that the lot had been sold to the Lantzes, and that a copy of the plans and specifications of the house to be erected thereon was given to Wayne. The conclusions of law declare "Lantz' vendee's lien was effective against only those subsequent mortgage lien holders who had actual knowledge thereof. *Notice of the contract of sale* did not constitute knowledge of the vendee's lien." (Emphasis added.) It seems clear from the foregoing that the Court of Appeals' interpretation of the evidence was that Wayne had notice of the Lantzes' contract of sale, but that this was not legally sufficient knowledge of their equity in the subject premises.

There is ample evidence in the bill of exceptions to support a finding that Wayne had notice that there was an outstanding contract to purchase the subject premises. The loan application, which was filled out by Yarborough and the president of the Wayne Agency, Wayne's agent for the making and servicing of mortgage loans, at the offices of the Wayne Agency, clearly states "Purpose of Loan: To construct for sale. Sold. Now. * * *" Immediately below is a recommendation of the loan, initialed by the president of the Wayne Agency. That person also testified (bill of exceptions, page 37):

"Q. What does 'sold' mean? A. He had sold it to somebody. Who, I don't know.

"Q. On October 13th, you new [*sic*] the lot had been sold?

A. If we grant him a loan to build a house, he had it sold.''

Although the president later equivocated on the point of the last-quoted sentence, Yarborough testified that he told the president he had the house sold, and that the president said he would ''take an application so long as there was a sales agreement and the house had been sold, but there would be no more speculation houses.'' (Bill of exceptions, page 59.) There is even a probable inference that Wayne knew the purchase price of the house, since it loaned money on a $30,000 applicant's valuation, before the house was built, which was also the amount of the Lantzes' contract with Yarborough.

The state of the facts before this court for review is, therefore, that Wayne had notice of an outstanding contract of sale from the first negotiations concerning this construction loan to Yarborough. Is this sufficient notice of the Lantzes' equity in the subject premises? The equitable lien of the vendee is based upon *money paid on the contract*, not simply on the contract itself. But ''notice'' is defined in Black's Law Dictionary (4th Ed. 1210) as knowledge of facts which would naturally lead an honest and prudent person to make inquiry. It does not necessarily mean knowledge of all the facts. The Supreme Court of Illinois, in *Smith, Trustee*, v. *Grubb* (1949), 402 Ill. 451, 84 N. E. 2d 421, stated at page 464: ''* * * One having notice of facts which would put a prudent man on inquiry is chargeable with knowledge of other facts he might have discovered by diligent inquiry. Whatever is notice enough to excite the attention of a prudent man and put him on his guard is notice of everything to which such inquiry might have led * * *.'' See also, 41 Ohio Jurisprudence 2d 32 and 35, Notice, Sections 13 and 14. One is chargeable with the notice which every person of ordinary prudence would necessarily have from the nature of the transaction. (*Reeder* v. *Barr* [1831], 4 Ohio 447), particularly where it is his business to know the facts of which notice is to be had.

From the foregoing, it would certainly seem, on reason alone, that a bank loaning money on property for the purposes of construction of a house thereon, and *being informed that there is an outstanding contract for the sale of such property* upon completion, would be on inquiry as to the extent of any already existing interest of a purchaser under such contract, and

would take a mortgage on the property subject to the equities of the purchaser. Analysis of the authorities confirms this conclusion. It is notice of "the contract" which is referred to in most discussions of notice of an outstanding vendee's lien. See annotations, 45 A. L. R. 352, 353, 359 and 369; 33 A. L. R. 2d. 1384, 1406; 55 American Jurisprudence 945, Vendor and Purchaser, Section 552; 92 Corpus Juris Secundum 580, Vendor and Purchaser, Section 556f. For notice of an outstanding equitable interest to exist, it is not necessary that a person have knowledge or notice of the identity of its owner, or the extent of the interest, but merely that there is such an interest. 55 American Jurisprudence 1070, Vendor and Purchaser, Section 689.

In Ohio, knowledge of the payments made under a contract to purchase real estate has not been a prerequisite to notice of the vendee's rights under the contract, arising from such payments. The possession by the vendee of the lands subject to his contract has been held sufficient notice of the vendee's rights, whether or not the possession was actually known to a subsequent mortgagor. *Jaeger* v. *Hardy*, 48 Ohio St. 335, 27 N. E. 863; *Ranney* v. *Hardy*, 43 Ohio St. 157, 1 N. E. 523. In the *Jaeger case*, the court declared, at page 340: "In this case, the possession of the defendant, Dixon * * * was sufficient notice of his rights under the contract * * *." In the *Ranney case*, the court said, at page 159, "as * * * [the mortgagee], when he loaned the money * * * knew that * * * [the vendee] was residing on the lot with his family, he was charged with knowledge of the terms and conditions upon which such possession was held." Therefore, in the instant cases this court holds that notice to Wayne of an outstanding contract to purchase the subject premises was sufficient notice of the equities of the Lantzes under such contract.

The remaining question with regard to priority between Wayne, mortgagee, and the Lantzes, vendees, concerns the necessity for payment on his contract by the vendee before actual notice of the existence of the mortgage. Where the vendee continues to pay out purchase money under his contract to purchase real estate without *actual* notice of a recorded mortgage, which is held by a mortgagee who took with notice of the

vendee's rights under his contract, the vendee has, in Ohio, been held entitled to priority as against such mortgagee, for the amounts he has actually paid before such actual notice. *Jaeger* v. *Hardy, supra* (48 Ohio St. 335); *Ranney* v. *Hardy, supra* (43 Ohio St. 157); *Berwald* v. *Summit Park Realty Co.* (App. 1929), 7 Ohio Law Abs. 440.

The Court of Appeals found that the Lantzes' vendee's lien existed in the amount of $8,000 but, although requested to separately state findings of fact and conclusions of law under Section 2505.30, Revised Code, did not make findings as to when the $8,000 was paid and the nonexistence of actual notice of the mortgage on the part of the vendee *at such time.* However, no question has been raised in this court as to the sufficiency of the findings and conclusions of the Court of Appeals in support of the $8,000 lien, and so any objection thereto is waived.

However, a cursory attempt was made by Wayne in its brief to raise the general issue of the validity and existence of the vendee's lien, in addition to its priority, and this court, however reluctantly, will honor this attempt and will examine the sufficiency of the evidence in support of the finding that the lien is a valid and subsisting lien in the amount of $8,000. The Court of Appeals did specifically find that the $8,000 was paid, and that a vendee's lien in that amount arose on August 28, 1963.

There is evidence to support a finding of a vendee's lien, good as against Wayne, in the amount of $8,000, but no evidence to support such a lien on August 28. Documentary evidence, properly introduced, establishes without contradiction the giving only of a cognovit note (Lantzes' exhibit No. 9) by the Lantzes upon the signing of their contract with Yarborough on August 28. This did not amount to a payment on the contract, until itself paid. However, further documentary evidence, properly introduced, establishes payment of $4,000 by the Lantzes by check on October 11, 1963 (Lantzes' exhibit No. 5, exhibiting evidence of its payment by the drawee bank on its face), and a further $4,000 on March 10, 1964. Thus there is evidence to support a vendee's lien of $8,000, arising in $4,000 increments on October 11, 1963, and March 10, 1964, which lien is prior to Wayne if such payments were made without actual notice of its mortgage. *Jaeger* v. *Hardy, supra* (48 Ohio St. 335).

The Court of Appeals did find that "all of the aforesaid dealings [the court had, in chronological progression, reached October 16 at that point] of Yarborough with Sauter Development Co. and The Wayne Building and Loan Company of Wooster, Ohio, was done without notice to or knowledge of Lantz'." This finding does not cover the date of the attaching of the lien of the second $4,000 payment, but, on the peculiar record in this case, the evidence is practically the same as to the Lantzes' notice of the Wayne mortgage on March 10, 1964, and before October 16, 1963. Yarborough contradicted himself on this point, but the Lantzes testified unequivocally that they had no such notice until after April, 1964. The Court of Appeals' finding on this point is sufficient to show that they credited the Lantzes on this point, and thus to support a finding of no actual notice by the Lantzes of the Wayne mortgage until April, 1964, after the second $4,000 was paid. The Lantzes are thus entitled to an $8,000 vendee's lien which has priority over the Wayne mortgage, regardless of when the advances giving rise to the Wayne mortgage lien were made.

As to the Sauter mortgage, practically the same reasoning applies. The Court of Appeals specifically found that "on October 16, 1963, Yarborough notified Sauter Development Co. of this contract of sale of Lot No. 150 to Lantz' * * *" and that "Sauter Development Co. approved the plans and specifications, which plans stated thereon: 'Home for Donald and Gloria Lantz.'" Sauter, thus, took its mortgage on October 24 with notice of the Lantz' contract of purchase. Donald Lantz and his wife both testified that they were never aware of the Sauter mortgage until "after April." There was no countervailing evidence. On the same reasoning then as to the Wayne mortgage, the Lantz' $8,000 vendee's lien is entitled to priority over the lien of the Sauter mortgage.

There remains, concerning the Lantzes' vendee's lien, the question of its priority as against the mechanics' liens herein. Section 1311.02, Revised Code, provides a lien in favor of mechanics' lienors which extends only to the interest of the person with whom the contract for the improvement is made, *"to the extent of the right, title, and interest of the owner, part owner, or lessee, at the time the work was commenced* or ma-

terials begun to be furnished * * *." (Emphasis added.) *Mahoning Park Co. v. Warren Home Development Co.* (1924), 109 Ohio St. 358, 142 N. E. 883 (paragraph two of the syllabus); *Mutual Aid Building and Loan Co. v. Gashe* (1897), 56 Ohio St. 273, 46 N. E. 985.

When work is done pursuant to a contract with the vendee, mechanics' liens attach only to his interest at the time of the commencement of construction or his after-acquired interest (see Sections 1311.02 and 1311.13, Revised Code), and the vendor's interest is not subject to the mechanics' liens. See *Mutual Aid Building and Loan Co. v. Gashe, supra.* But purchasers from the vendee, after such liens attach, take subject thereto. *Ib.* While there appears to be no cases in this court on the obverse situation, where the vendor contracts to improve the land, and the vendee has an interest outstanding at the time mechanics' liens attach, the above quoted portion of Section 1311.02, Revised Code, clearly covers that situation as well.

The situation of the vendee in the instant cases is directly analogous to that of the vendee in *Coggshall v. Marine Bank Co., supra* (63 Ohio St. 88). In that case an attachment suit was begun against a vendor and the land subject to the land contract was attached. The court held that the lien of the attachment subjected the interest of the vendor to the judgment eventually rendered in such suit, and such interest consisted of legal title, plus a beneficial interest to the extent of the unpaid purchase money. The vendee's interest at the time of the attachment was equal to the amount of the purchase money paid prior to the attachment, and to that extent only was the vendee prior to the lien of the attachment suit.

The case of a vendee's payment after the attaching of mechanics' liens is covered by Section 1311.13, Revised Code, which provides as follows:

"Liens under Sections 1311.01 to 1311.24, inclusive, of the Revised Code are effective from the date the first labor is performed, or the first machinery, materials, or fuel is furnished by the contractor under the original contract, and shall continue for six years after an affidavit is filed in the office of the County Recorder under Section 1311.06 of the Revised Code. If an action is brought to enforce such lien within that time, it continues in

force until final adjudication thereof, and such liens take priority as follows:

" * * *

"(B) Such liens shall be preferred to all other titles, liens, or encumbrances which may attach to or upon such construction, excavation, machinery, or improvement, or to or upon the land upon which they are situated, which shall either be given or recorded subsequent to the commencement of said construction, excavation, or improvement."

In the language of Section 1311.13(B), Revised Code, the lien of a payment made after the commencement of construction by a vendee under a contract to purchase real estate, which lien arises as such payment is made, constitutes a "lien" " given * * * subsequent to the commencement of said construction, excavation or improvement." This lien is thus specifically subsequent to the mechanics' liens arising from "said construction." Since this priority is controlled by specific statute which says nothing about notice, it is irrelevant whether or not the vendee, at the time of his payment, had notice of the attaching of mechanics' liens. Since construction in the instant cases began after the Lantzes' first payment, but before their second payment, the Lantzes are prior to the mechanics' lienors in the amount of $4,000, and subsequent to them in the amount of an additional $4,000.

The next set of questions concerns priorities as between Wayne, Sauter and the mechanics' lienors.

The Court of Appeals found as a fact, which is supported by evidence in the record, that the first work (excavation) on the premises in question was commenced on November 21, 1963. The duly perfected liens of subcontractors, materialmen and laborers are thus all effective from such date. Section 1311.13, Revised Code; *Rider* v. *Crobaugh* (1919), 100 Ohio St. 88, 125 N. E. 130. Therefore, no matter when the Sauter mortgage may have been validly executed by the parties thereto, it is clearly subsequent in priority to the mechanics' and materialmen's liens, since it was not recorded until December 11, 1963. See Demann, Ohio Mechanic's Lien Law 2d 261, Section 10.4.

In Ohio, a mortgage does not take effect against third parties until recorded (Section 5301.23, Revised Code), and,

therefore, to state the effect of Section 1311.13(B), Revised Code, if a mortgage is "recorded" subsequent to the first work on the mortgaged premises, it is subsequent in priority to the "liens under Sections 1311.01 to 1311.24, inclusive, of the Revised Code" which are "effective from the date the first labor is performed, or the first machinery, materials, or fuel is furnished by the contractor under the original contract * * *."

In *Rider* v. *Crobaugh, supra* (100 Ohio St. 88), a nonconstruction mortgage was also given to secure unpaid purchase money, and before recording of the mortgage work was commenced on the mortgaged premises under contract with the owner. It was held that the mechanics' lienors were entitled to priority, and no significance was attached to the fact that some of them performed their part in the construction after the mortgage was recorded. In its opinion, at page 94, the court stated: "While Section 8542, General Code [Section 5301.23, Revised Code], giving mortgages a lien from the date of filing, is still effective, it must yield to this later legislative pronouncement giving mechanics and materialmen preference over mortgages filed subsequent to the commencement of construction, excavation, or improvement." See, also, *Holgate State Bank* v. *Gauggel* (1966), 6 Ohio St. 2d 256, 217 N. E. 2d 867.

It is noted further that no prior vendor's lien represented by a mortgage could be claimed in a case such as this, since Section 5301.26, Revised Code, provides:

"As between the vendor and vendee of land the vendor shall have a lien for so much of the purchase money as remains unpaid. *Such lien shall not be effective as against a purchaser,* mortgagee, judgment creditor, or *other encumbrancer, unless there is a recital or a reservation of the lien in the deed, or in some instrument of record* executed with the same formalities as are required for the execution of deeds and mortgages of land. *The vendor waives his lien by taking a mortgage for any unpaid purchase money on the land conveyed or any part thereof,* and the filing for record of such a mortgage with the county recorder of the county in which said land is located shall be constructive notice of the waiver of the vendor's lien." (Emphasis added.) No such reservation was made by Sauter herein.

It is incumbent upon the seller of real property who de-

sires to secure priority over mechanics' liens for his claim for unpaid purchase money to either reserve a vendor's lien in his conveyance and not waive the same, or to record his purchase money mortgage promptly, and before the visible commencement of work upon the mortgaged premises, in the case of intervening mechanics' lienors. *Cf.* 36 Ohio Jurisprudence 2d 563, Mechanics' Liens, Section 112. Having failed to avail itself of these means of securing priority over mechanics' liens, Sauter must be held subsequent in priority thereto.

With regard to the Wayne mortgage, the situation is more complicated. Unlike the Sauter mortgage, for which value (land) was given prior to its recording, the Wayne mortgage was one under which future advances were contemplated for construction purposes, and which advances were, in fact, all made subsequent to even the rerecording of the Wayne mortgage on December 11. The advances were, therefore, made long after the commencement of work on the subject premises; however, the Wayne mortgage was first recorded on November 1, before work was commenced. In addition, the Wayne mortgage contained the following language: "Said grantors further say that this mortgage is given to pay for improvements or prior liens, or both, on said premises and hereby covenant and agree with the grantee, its successors and assigns, that said grantee, its successors and assigns, as mortgagee herein, is authorized and empowered to do all the things provided to be done by Section 1311.14 of the Ohio Revised Code and by all sections of the Ohio Mechanics Lien Laws, so-called, and amendments thereto."

Section 1311.14, Revised Code, specifically allows priority to a construction mortgage for future advances over mechanics' liens *filed for record after* such construction mortgage was filed for record, if the construction mortgage complies with the formal requirements of such section and the disbursement of mortgage funds satisfies such section. See Demann, Ohio Mechanic's Lien Law, Section 105, page 262. Although the Wayne mortgage satisfied the formal requirements of Section 1311.14, Revised Code, distribution of the mortgage fund was apparently not made by the means set forth in divisions A to G, inclusive, of such section, or at least no proof was offered to that effect,

and the burden would be on the mortgagee seeking the benefit of such section to establish compliance therewith. Nor did Wayne establish that the mortgage proceeds were "actually used in such improvement in the manner contemplated in Sections 1311.02 and 1311.03" (Section 1311.14, Revised Code) (see Court of Appeals finding No. 11), and disbursed pursuant to statutory affidavits, certificates, and notices (Sections 1311.04, 1311.05) so averring. See *Knollman Lumber Co.* v. *Hillenbrand* (1940), 64 Ohio App. 549, 29 N. E. 2d 61, motion to certify overruled, October 23, 1940; Magrish, Disbursement of Ohio Construction Mortgage Loans, 12 Cincinnati L. Rev. 1, 17-23 (1938). But see *Hillsdale Loan & Bldg. Co.* v. *Creager* (1965), 5 Ohio Misc. 147, 151, 214 N. E. 2d 703. The Common Pleas Court's finding observes further that Yarborough "used the money that had been paid to him by the Wayne Building & Loan Company to pay past indebtedness."

Wayne not having established the aforementioned facts, the Wayne mortgage could not be prior to the mechanics' liens herein unless its November 1st recording (which took place prior to the commencement of the first work on the subject premises) was valid and proper as to such parties. The challenge to the recording of the Wayne mortgage prior to the attaching of the mechanics' liens is that it is out of the chain of title and, therefore, is no recording at all, within the meaning of Section 1311.13(B), Revised Code, and Section 5301.23, Revised Code. While certain of the cases relied upon by appellants attacking the recording of the Wayne mortgage do establish that an instrument filed outside the *record* chain of title will not be held to furnish constructive notice to subsequent purchasers in the record chain, they do not establish that such an instrument is not recorded for all purposes. See 45 American Jurisprudence, 469, 474 and 476, Records and Recording Laws, Sections 87, 97 and 99. *Sternberger* v. *Ragland* (1897), 57 Ohio St. 148, 48 N. E. 811, is readily distinguishable from the instant case. The first paragraph of the syllabus in that case reads as follows:

"A purchaser of real property *from one who appears of record to have the title* is not required to examine for mortgages made *to the latter* after he became owner; nor is the record of such a mortgage constructive notice to the purchaser, of a *prior*

*unrecorded deed made by his grantor* to the mortgagor." (Emphasis added.)

It is not necessary to decide in these cases whether mechanics' lienors may be purchasers at all, within the meaning of the *Sternberger case* and of Section 5301.25, Revised Code, for it may be assumed that they are, and the recording of the Wayne mortgage is still sufficient as to them.

The rationale of the *Sternberger case* is that the record gave no constructive notice to one otherwise a bona fide purchaser without notice, because the only recorded instrument the other party could rely on was out of *the purchaser's chain of title,* and the purchaser had a right to rely on a record chain complete in his grantor. Also, the unrecorded deed out from his grantor was fraudulent as to the bona fide purchaser under the predecessor of Section 5301.25, Revised Code. However, the mechanics' lienors, even if purchasers, are not purchasers from one who appears of record to have the title, nor is there any question herein of *unrecorded* conveyances by the common grantor of all the parties (Yarborough).

In the *Sternberger case,* a title searcher could obviously not have found the unrecorded deed out from the bona fide purchaser's grantor, and would, therefore, have had no reason to search for encumbrances back to such grantor, when he appeared of record to have title. In the instant cases, it was specifically found that Yarborough contracted for labor and materials with the mechanics' lienors as owner, and they, therefore, clearly claim through him. If they had checked his title, the first thing they would have found would have been his mortgage to Wayne. They would not have found a deed to Yarborough, but surely that would not privilege them to ignore the mortgage. It would merely put them upon inquiry as to whether Yarborough was really the owner of the premises and upon such inquiry, Yarborough, Wayne, or Sauter could have informed them of Yarborough's deed. In the language of *Sternberger,* Yarborough did not appear of record to have the title and it is not unreasonable to impute to *those who claim through* an unrecorded deed, knowledge of the contents thereof. In fact, such is the traditional rule, which has been recognized in this state.

In *Lessee of Beardsley* v. *Chapman* (1853), 1 Ohio St. 118,

a part of the headnotes reads as follows: "The general rule is that a person *is not chargeable with notice of an adversary title* in the absence of proof, but that he is bound to know the defects apparent upon his own title papers, and *is required to take notice of the recitals in the chain of deeds, or other muniments under which he claims.*" (Emphasis added.) Thus, the mechanics' lienors were bound to know when Yarborough, under whom they claim, acquired title, and to search his title back to such date. See *Equitable Development Corp.* v. *V. & L. Construction Co.*, 207 N. E. 2d 803 (Common Pleas 1965). If they did not do so, that is not the fault of Wayne, which properly placed its mortgage on record.

Another case relied upon by appellants supports rather than refutes the view just set forth. In *Exrs. of Leiby* v. *Wolf* (1840), 10 Ohio 83, Wolf, a holder under an unrecorded lease, sold his interest to M. Smith, who obtained a recorded lease to himself from the holder of record title. It was held that M. Smith's remote grantee, without actual notice of a recorded mortgage by Wolf of his interest when he held under the unrecorded lease, was not bound by the record of such mortgage, as it was out of such remote grantee's chain of title. However, in his opinion, Lane, C. J., observed:

"Whenever the state of the title on record would lead a searcher of incumbrances, who was using common prudence and care in investigating the title, to a knowledge of the fact, the law assumes that he acquired the knowledge of it. *A purchaser, therefore, from Wolf, ought to learn all conveyances, from Wolf, existing on record at the time of his purchase.*" (Emphasis added.) See, also, *Wright* v. *Franklin Bank* (1898), 59 Ohio St. 80, 94, 51 N. E. 876.

In Ohio, a deed does not have to be recorded to pass title. Whether or not recorded, a deed in Ohio passes title upon its proper execution and delivery, so far as the grantor is able to convey it. *Baldwin* v. *Bank of Massilon* (1853), 1 Ohio St. 141. On October 16, 1963, Yarborough, therefore, received title, although, until his deed was recorded, the record owner, Sauter, retained power, under Section 5301.25, Revised Code, to pass title to a "bona fide purchaser having, at the time of purchase, no knowledge of the existence of such former deed * * *." How-

ever, Sauter made no such recorded conveyances and that statute has no application as between those otherwise bona fide purchasers all of whom claim through an unrecorded deed. To so hold would have the absurd result of making the very deed under which such purchasers claim fraudulent and void as to them, cutting off their title completely. Until his title was cut off by a bona fide purchaser from the record owner, Sauter, Yarborough retained power to act as to the subject premises. Under Section 5301.23, Revised Code, the lien of Wayne's mortgage from Yarborough was completed by its being placed on record. *Brown* v. *Kirkman* (1853), 1 Ohio St. 116. Whether or not that record was sufficient to furnish notice to other claimants to the land is another question, and in *Brown* it was held that actual notice of a defectively recorded mortgage was sufficient to give priority to the lien as against a subsequent encumbrancer. The court said that the record could only give constructive notice when its examination would furnish actual notice. In the instant cases examination of the record by those knowing of and claiming through Yarborough would have furnished actual notice of the Wayne mortgage, and, therefore, the record thereof is constructive notice as to such parties.

Appellant Falls Lumber, a mechanic's lienor, contends that the prior recording under Section 1311.13(B), which gives mortgages priority over later-attaching mechanics' liens must be such as would give notice, the same as under Section 5301.23. With this view the court concurs, but herein it is held that Wayne's recording of its mortgage from Yarborough would give notice to those such as the mechanics' lien claimants claiming under Yarborough under Section 5301.23, and this is sufficient to satisfy Section 1311.13 as well.

The fact that the Wayne mortgage may have been, as to the mechanics' lienors, properly recorded prior to the commencement of construction establishes that Wayne is not barred by its failure to comply with Section 1311.14, Revised Code, from taking priority over such parties; but it remains to be considered whether it establishes that Wayne *is actually entitled* to such priority. The Court of Appeals on this point held: "The promissory note and mortgage deed [from Yarborough to Wayne] alone imply the obligation on the part of the mortgagee

to advance monies in the amount indicated to the mortgagor and there is no requirement that such monies be used in the construction of a building on the premises." The trial court, after a similar statement, added: "Under the law in * * * [*Kuhn, Trustee*, v. *Southern Ohio Loan & Trust Co.* (1920), 101 Ohio St. 34, 126 N. E. 820], where a mortgage for obligatory advances is duly recorded, such record is notice to subsequent incumbrancers of a prior lien for the full amount for [*sic*] such obligatory advances; that is, for the amount that was actually advanced in the construction of the building." The above is also the position of Wayne in this court. Appellant Falls Lumber Company, a materialman, in essence argues that the advances secured by Wayne's mortgage were not, in fact, obligatory, and that Wayne's mortgage lien, therefore, arose as each disbursement was made, and only to the extent thereof at the time of each such disbursement. In these cases, since the disbursements were all made after the commencement of construction on the subject premises, acceptance of Falls Lumber's argument would result in the mechanics' lienors all being prior to Wayne.

From the foregoing, it at least appears that all the parties concerned and both courts below considered that Wayne's advances under its mortgage for future advances were required to be "obligatory" for the lien of Wayne's mortgage to be prior to the mechanics' liens in the circumstances of these cases. However, the applicability of the doctrine of obligatory advances (established in Ohio by *Kuhn, Trustee*, v. *Southern Ohio Loan & Trust Co., supra* [101 Ohio St. 34]), where the attaching of *mechanics' liens* intervenes between the recording of the mortgage intended to secure the advances and the actual making of the advance by the mortgagee, appears to be a question of first impression in this court. In the *Kuhn case*, the intervening encumbrance was a *mortgage*. In *Rider* v. *Crobaugh* (1919), 100 Ohio St. 88, 125 N. E. 130, priority over intervening mechanics' liens was simply accorded to the construction mortgagee on the basis of the recording of the mortgage before the commencement of construction, without discussion of the obligatory or nonobligatory nature of the advances involved. However, the *Rider case* was decided during the year preceding the

decision of the *Kuhn case*, and, therefore, the court in *Rider* could not have considered *Kuhn*.

Among lower Ohio courts, the decisions are conflicting. *Geer* v. *Tuggle*, 22 N. P. (N. S.) 129, 137 to 139 (decided two months before *Rider*), and *Connecticut Gen. Life Ins. Co.* v. *Birzer Bldg. Co.*, 101 N. E. 2d 408 (Common Pleas 1950), have applied the obligatory advances requirement in cases involving intervening mechanics' liens. No Ohio lower court has been found which has considered the problem and squarely held that there is no such requirement, although *Rider* has been followed without discussion of the issue by one case clearly involving all of the relevant facts (*New Steelton Lumber Co.* v. *Pierce*, 7 Ohio Law Abs. 24 [Common Pleas, 1929]), and apparently by several others where it cannot reasonably be determined from the opinions whether or not all the relevant facts were present. See *Becker* v. *Wilson* (1929), 30 Ohio App. 340, 165 N. E. 108 (semble); *Ogier, Rec.,* v. *Alsdorf* (App. 1934), 18 Ohio Law Abs. 317; *Commerce-Guardian Bank, Trustee,* v. *Catawba Cliffs Beach Club, Inc.* (1936), 54 Ohio App. 437, 7 N. E. 2d 830, motion to certify overruled Feb. 10, 1932; *North Shaker Boulevard Co.* v. *Harriman Natl. Bank of New York, Trustee* (1924), 22 Ohio App. 487, 153 N. E. 909 (semble); *A. G. Sharp Lumber Co.* v. *Manus Homes, Inc.* (App. 1961), 90 Ohio Law Abs. 421 (semble). *Cf. Fishman* v. *Helwig* (1932), 43 Ohio App. 530, 183 N. E. 883; *Witner* v. *Goodman* (Common Pleas, 1931), 28 N. P. (N. S.) 537, deciding primarily subsidiary issues. In addition, two federal cases deciding questions of Ohio law have, on none too clear a basis, accorded priority to the mortgagee in the fact situation now under consideration. See *In re Taylor* (1927), 20 F. 2d 8; *In re Williams* (1918), 252 F. 924. It can certainly be said that there has been found no case that is particularly persuasive on the present issue.

The rationale for holding future advances to be subject to encumbrances attaching after the recording of a mortgage to secure advances is found in the cases of *Spader* v. *Lawler* (1848), 17 Ohio 371, and *Second National Bank of Warren* v. *Boyle* (1951), 155 Ohio St. 482, 99 N. E. 2d 474. The first and most important part of this rationale is the notion, ultimately based in Ohio upon the mortgage recording statute, of a mort-

gage as security for a debt. As said in *Spader* v. *Lawler, supra,* at page 379: "* * * If nothing was ever advanced, no one would pretend that it was a mortgage. A mortgage is a security for the payment of money. If there was no money due, there could be nothing to secure, and consequently no mortgage." This position was reaffirmed in *Second National Bank* v. *Boyle, supra,* wherein it was made clear that a mortgage to secure future advances was not invalid in Ohio, but that it was not a lien until the advances were made on the faith of the mortgage, if they were not obligatory advances.

The second rationale is the lack of notice furnished to subsequent encumbrancers by a prior recorded mortgage securing advances which may or may not be made. Thus, in *Spader* v. *Lawler, supra,* the court, at page 379, said that "it would seem nothing more than reasonable that it [the mortgage] should advise the public of the only really material thing for them to know—what is the amount it actually secures. * * * Such a mortgage might well be denominated a mortgage *in esse*—without the possibility of issue extinct—as no man can tell what progeny of numerous debts it might subsequently gather under its motherly folds."

Where the mortgagee is, in fact, firmly bound to make advances (*i. e.,* they are "obligatory") for a certain purpose, under definite conditions and in a certain amount, both branches of the preceding rationale are substantially satisfied. As was said in *Kuhn* v. *Southern Ohio Loan & Trust Co., supra* (101 Ohio St. 34): "On the other hand, the grantee in the later mortgage has notice by the record that the proposed security for the later mortgage loan is already encumbered, not merely by way of contingency or expectancy, but for a definite purpose under a fixed obligation." As to the concept of a mortgage as security for a debt, "as the mortgagee is bound from the date of his agreement to make the advance, the obligation to repay him, from his point of view, arises at that time." Note, 1 U. of Cincinnati L. Rev. 348, 355 (1927). Furthermore, it would be inequitable not to accord priority to the obligatory advances of the mortgagee. He is bound to make the advances, and he cannot avoid doing so without breaking his contract, and it can, therefore, no longer be urged that it is inequitable for him to

make advances after knowledge of the intervening claim. Notes, *Ib.* at 350; 25 U. of Cincinnati L. Rev. 82, 87 (1956). As was declared in the *Kuhn case, supra,* at page 37, "upon what principle, then, of equity or public policy, can it be said that such mortgagee must again search the records before making each advance to the mortgagor? The search would be a vain thing, since the advance or further loan would remain obligatory, whatever the state of the title disclosed."

By Section 1311.13, Revised Code, all mechanics' liens arising from a single construction or improvement are effective from the date the first reasonably apparent labor, materials, or fuel are furnished on such construction or improvement. See *Fryman* v. *McGhee* (1958), 108 Ohio App. 501, 163 N. E. 2d 63. The affidavit required by Section 1311.13, Revised Code, has been held merely to "perfect" the lien. 36 Ohio Jurisprudence 2d 546, Section 94; Demann, Mechanic's Lien Law (2 Ed.) 255, Section 10.1. The mechanics' liens thus attach at the time of such commencement of construction, the same as mortgage liens "take effect" from the date of filing (Section 5301.23, Revised Code), or judgments are liens upon land "from the time" of filing a "certificate of such judgment with the Clerk of the Court of Common Pleas" of the county wherein the land is situated (Section 2329.02, Revised Code), or "from the time" when the lands and tenements "are seized in execution" (Section 2329.03, Revised Code).

This court can see no reason for distinguishing between the intervening mechanics' lienors and the mortgagee in *Kuhn* or the judgment lienor in *Second National Bank of Warren* v. *Boyle, supra.*

The mechanics' lien statutes are remedial legislation, designed to protect the wage earner, furnisher of materials, and contractor whose work, goods, and skill create the structures to which the lien in part attaches. See 36 Ohio Jurisprudence 2d 430, Mechanics' Liens, Section 6.

Demann, Ohio Mechanic's Lien Law (2 Ed.), 2, Section 1.1, states: " 'It was to secure to the laborer his hire or reward for the construction or repair which he had made. The means devised was, to permit him who had, by labor, skill, or material contributed to constitute a permanent object of value, to hold

proprietorship pro tanto therein, until paid the price thereof according to contract, if under contract, or otherwise according to the just value of such contribution.' " *Thomas* v. *Huesman*, 10 Ohio St. 153, quoted in Demann, *supra*. See, also, Demann, *supra*, pages 3 and 4, and cases cited therein. Once a mechanic's lien is established, the statute is to be liberally construed to effectuate the preceding remedial purpose. *Robert V. Clapp Co.* v. *Fox* (1931), 124 Ohio St. 331, 178 N. E. 586; Section 1311.24, Revised Code. In the instant cases, the mechanics' liens have been validly perfected according to statute. Those questions, and the propriety of the amounts of the liens, were determined in the courts below and are not challenged here. The mechanics and materialmen are, therefore, entitled to the liberal construction enjoined by Section 1311.24, Revised Code, and this court is of the opinion that the already-referred-to equities in favor of the mortgagee making obligatory advances shift to favor intervening mechanics' lienors when the advances are not obligatory.

It is within the power of the mortgagee to satisfy himself that the money advanced is actually used in the construction in question, or so to obligate himself that he will be accorded priority over intervening encumbrancers in any event. Such a mortgagee lends money beyond the present value of the security on the faith and for the purpose of construction. If his estimate of the value of the improvement is accurate, and he sees to it that the money advanced is actually used in the construction of the improvement, the mechanics and the materialmen will be paid; there will be no valid mechanics' liens; the value of the security will be enhanced; and the mortgagee can get back the money he advanced upon foreclosure and sale of the security, if that is necessary, *without the necessity of being held prior to mechanics' lienors*. Since the mortgagee has the option of advancing or not advancing, and he may by due diligence insure that the money advanced inures to the benefit of his security before he advances, it is only just that he should bear the burden of any loss which he could have prevented, in contrast to a mechanic's lienor who has enhanced the value of the mortgagee's security by his labor or goods and who exercises the diligence which the law requires from him and pursues his only remedy by following the statutory procedure to obtain his lien.

Therefore, it is held that where nonobligatory advances are made after the commencement of construction and not in accordance with Section 1311.14, Revised Code (or are not shown to have been actually used in the construction for which liens are claimed), under a mortgage contemplating future advances which was recorded prior to such commencement of construction, the lien of such advances is held subsequent in priority to the mechanics' liens arising from such construction.

This court is aware that the rule in most states subordinates liens for nonobligatory future advances in this situation only where the mortgagee for such advances has *actual notice* of the intervening encumbrance before making the advance. See annotation, 80 A. L. R. 2d 179, 219 to 221; Note, 1 U. of Cincinnati L. Rev. 348, 349, n. 9; Note, 25 U. of Cincinnati L. Rev. 82, 88, n. 15 (1956); 36 American Jurisprudence 809, Mortgages, Section 235; 59 Corpus Juris Secundum 320, Mortgages, Section 250. The Court of Appeals made no finding of such actual notice herein. However, in Ohio and some other states the rule has traditionally been that constructive notice of the intervening encumbrance to the prior mortgagee is sufficient. *Spader* v. *Lawler* (1848), 17 Ohio 371; Notes, cited immediately *supra*. See 80 A. L. R. 2d 179, 222 to 224.

This court is not disposed to change the traditional Ohio rule in the case of construction mortgagees who make nonobligatory advances after the commencement of construction, without compliance with Section 1311.14, Revised Code, or without statutory proof that the funds are actually used in the contemplated improvement. The beginning of construction sufficient for the attaching of mechanics' liens must be "reasonably apparent," *Fryman* v. *McGhee, supra*, and this is analogous to the kind of notice that open and notorious possession gives to subsequent purchasers of the rights of the vendee in possession under a land contract. The reasonably-apparent commencement of construction furnishes a relatively objective test, which is more analogous, at least, to the objectivity of the filing of a mortgage than is a subjective determination of the mortgagee's actual knowledge.

Futhermore, the commencement of construction on the mortgaged premises is something of which the construction

mortgagee should be charged with knowledge. Knowledge that construction is proceeding is an inseparable by-product of the mortgagee's seeing to it that its advances are disbursed in accordance with Section 1311.14, Revised Code, or are actually used in the construction. It would be folly to hold the mortgagee to a duty of diligence to obtain priority over intervening mechanics' liens and at the same time to allow it to avoid that duty by lack of an indispensible item of knowledge. Such a holding would allow the mortgagee the benefit of its own lack of diligence, at the expense of those whose labor, materials, and skills almost certainly enhance the value of the building, if they be entitled to payment.

The reasoning of this opinion thus far results in Wayne being subsequent in priority to the mechanics' lienors herein, unless it can show that the advances made under its mortgage were in fact obligatory.

The language of the mortgage deed from Yarborough to Wayne (quoted above, page 209) is the same in legal effect as that contained in the mortgage under consideration in *Kuhn* v. *Southern Ohio Loan & Trust Co., supra*. This language in and of itself contains no obligation on the part of the mortgagee to disburse any certain amount of money under the mortgage in any particular manner. If the mortgage herein had *required* Wayne to advance a *certain and definite sum*, in a *particular manner* (as, for example, in accordance with Section 1311.14, Revised Code), the mortgage lien of Wayne would have been prior to intervening mechanics' liens to the extent the sum was advanced in accordance with the specified manner. *Connecticut Gen. Life Ins. Co.* v. *Birzer Bldg. Co., supra* (101 N. E. 2d 408). Although the better practice would seem to be for the mortgage papers filed for public record to contain or refer to the obligation to advance, for such would furnish notice to the prospective mechanic or materialman that there is a prior lien in the amount specified, it is not necessary to decide that question for the present. The "inference of fact" arising from inclusion in the mortgage of the language of the mortgage in *Kuhn* arises only "in the absence of other evidence." Review of the record and the findings of fact of the courts below convinces us that Wayne was in fact not obligated to advance a certain sum in a particular manner or under definite conditions in this case.

It was specifically found by the Court of Appeals that there was no agreement between the Yarboroughs and Wayne that was not contained in the mortgage, note, assignment of funds, or agreement with respect to mechanics' liens, and perhaps the loan application. While these reveal that the purpose of the advances was to construct a house, they reveal no obligation on the part of Wayne to advance a certain sum, under particular conditions, for this purpose. While the assignment of the Yarboroughs to the Wayne Agency states "subject to your rules governing for the disbursement of money on loans," no such rules were introduced in evidence. It is noted that in fact Wayne never advanced the entire amount for which its mortgage ostensibly stood as security. It is noted further that no one testified at trial that Wayne was "obligated" to pay money to Yarborough through the Wayne Agency, and in fact the above assignment, referred to by the president of the Wayne Agency as a "pay out order," was further referred to by him as merely *authorizing*—"it authorizes"—payment to the Wayne Agency of the loan fund.

Certainly, nothing in the record establishes that there was any kind of an agreement between the Yarboroughs and Wayne *obligating* Wayne to pay *certain sums* to Yarborough for construction purposes under *certain conditions*. The papers offered on behalf of Wayne merely signify its willingness to advance moneys on the strength of its mortgage as long as construction appeared to be progressing, and in the amounts that Yarborough requested and appeared to need. Almost all the payments were made to Yarborough himself, and not to materialmen or subcontractors. This kind of discretionary procedure does not amount to obligatory advances, and is not, therefore, entitled to protection. It is thus held that the lien of Wayne's mortgage dates only from the time of each optional advance thereunder, and the entire lien is, therefore, subsequent to the mechanics' liens herein, each advance having been made subsequent to the conmmencement of construction.

As to priorities herein between Wayne and Sauter, little more need be said. Although the Wayne mortgage was properly recorded as to Sauter on November 1 by the same reasoning as makes it properly recorded as to the mechanics' lienors on such date, it was specifically found by the Court of Appeals that all

disbursements by Wayne were made after December 11, 1963, the date of recording of the Sauter mortgage, for which value was given prior to its recording. As this court has held that Wayne's advances were not obligatory, the recorded mortgage did not secure a lien until the advances were made, after December 11, 1963. *Kuhn* v. *Southern Ohio Loan & Trust Co., supra.* The lien of the Sauter mortgage thus attached before the lien of the Wayne mortgage, and Sauter has priority.

It is the opinion of this court that the lien priorities in this case are:

1. Lantzes' vendee's lien, in the amount of $4,000, plus interest from October 11, 1963.

2. The mechanics' lienors, the validly established claims in the amounts determined below, share second priority.

3. Lantzes' vendee's lien, for an additional $4,000, plus interest from March 10, 1964.

4. Sauter, in the amount of its mortgage lien, established below.

5. Wayne, in the amount of its mortgage lien, established below.

*Judgment reversed.*

ZIMMERMAN, TROOP, HERBERT and BROWN, JJ., concur.

TAFT, C. J., and SCHNEIDER, J., concur in paragraphs one, three, five and six of the syllabus and in the judgment of reversal.

TROOP, J., of the Tenth Appellate District, sitting for MATTHIAS, J.

TAFT, C. J. I concur in paragraphs one, three, five and six of the syllabus and in the judgment of reversal; and I agree with the statement of lien priorities at the end of the majority opinion, except to the extent that it purports to determine that a part of the $8,000 vendee's equitable lien has priority over the legal claims of mechanics' lienors, where there is no finding or evidence that such lienors had any notice of the vendee's equitable lien.

As stated in the brief filed in behalf of the Lantzes, who claim the $8,000 vendee's lien:

"Since this property has been sold and the proceeds are sufficient to pay the Lantzes' liens and the mechanics' liens, it is somewhat academic to argue priority between the vendee's lien and the mechanic liens."

Probably for this reason, the only appealing mechanics' lien claimant ignored the existence of any controversy between the mechanics' lienors (whose claims were allowed for approximately $7,000) and the owner of the $8,000 vendee's lien.

Both the Lantzes and the mechanics' lien holders concede in their brief that the proceeds of the foreclosure sale were $22,500 an amount more than sufficient to satisfy the established claims of all mechanics' lienors and the vendee's lien. Thus, it is not necessary for this court to determine whether any of the vendee's equitable lien has priority over the legal claims of mechanics' lienors who are not shown to have had any notice of that equitable lien. In my opinion, the questions involved in such a determination are sufficiently doubtful so as to require us to refrain from apparently deciding them now when the questions have not been presented to us for decision. Hence, I find it unnecessary to consider the correctness of the law as stated in paragraph two of the syllabus.

Also, because of the pronouncements in paragraphs five and six of the syllabus, it seems to me that the question dealt with in paragraph four of the syllabus is not presented to us for decision, and I express no opinion as to the correctness of the law as stated in that paragraph.

SCHNEIDER, J., concurs in the foregoing concurring opinion.