6

THE AKRON SAVINGS & LOAN CO., APPELLEE, *v.* RONSON HOMES, INC., ET AL.; CARTER-JONES LUMBER CO., APPELLANT.

[Cite as Akron Sav. & Loan Co. v. Ronson Homes, 15 Ohio St. 2d 6.]

(No. 41089—Decided June 19, 1968.)

*Mr. Karl S. Hay,* for appellee.
*Mr. Harry W. Schwab, Jr.,* for appellant.

O'NEILL, J.   The first question which this court is required to determine is: Was the mortgagee, Akron Savings & Loan, under an obligation to advance the entire sum appearing on the face of the mortgage and for which the mortgage ostensibly stood as security?

The appellee, in support of its position, relies upon *Kuhn* v. *Southern Ohio Loan & Trust Co.* (1920), 101 Ohio St. 34, 126 N. E. 820.   The first and second paragraphs of the syllabus in that case read:

"1. A mortgage duly recorded, given for definite future advances *which the mortgagee is obligated to make,* is entitled to priority for the full amount of such advances over a subsequent mortgage recorded after the former one though prior to the making of such future advances. (*Spader* v. *Lawler,* 17 Ohio 371, distinguished.)

"2. Where a mortgage for obligatory advances is duly recorded, such record is notice to subsequent encumbrancers of a prior lien for the full amount of such obligatory advances."   (Emphasis supplied.)

Both before and after the decision in *Wayne Bldg. & Loan Co.* v. *Yarborough, supra* (11 Ohio St. 2d 195), *Kuhn* is authority for the appellee's position that it should have priority over subsequent materialmen.   This is true, however, under *Kuhn* only if the mortgage agreement *obligated* appellee to make definite and certain advances.   How-

ever, the mortgage agreements in the instant case do not manifest such an undertaking by appellee, and, therefore, the holding in *Kuhn* is not dispositive of the instant case.

This court, in paragraph six of the syllabus in *Yarborough, supra,* ruled that:

"* * * advances are not obligatory where the instruments introduced on behalf of the mortgagee, and constituting its entire agreement with the mortgagor concerning the mortgage loan, evidence no obligation to disburse definite and certain sums, under definite conditions, or in a particular manner. The existence of discretion on the part of the mortgagee as to the amounts to be disbursed under particular conditions is inconsistent with the existence of obligatory advances."

The mortgage agreement in the instant case must be examined in light of the ruling announced in *Yarborough.* The written agreements of the parties in the instant case, so far as the significant and controlling provisions are concerned, are identical with the documents considered by this court in *Yarborough.* The mortgage, the loan application and the loan disbursement record in the instant case do not describe the extent to and the manner in which the mortgagee obligates itself to make advances of the "loaned" funds. Inclusion in the mortgage of the recital that the mortgage "is given to pay for improvements" and that the mortgagee "is authorized and empowered to do all things provided to be done by Section 1311.14" is not decisive "in the absence of other evidence." *Kuhn* v. *Southern Ohio Loan & Trust Co., supra.* Here, as in *Yarborough,* the written agreements, *i. e.,* "the other evidence," do not clearly show that the mortgagee was "obligated to advance a certain sum in a particular manner or under definite conditions." *Wayne Bldg. & Loan Co.* v. *Yarborough, supra,* at page 220. Without more, the sixth paragraph of the syllabus in *Yarborough* is dispositive of the instant case and requires a finding that the written agreements do not obligate the mortgagee to advance the entire amount of money appearing on the face of the mortgage, for which the mortgage ostensibly stood as security.

However, the record reveals that an oral agreement existed between mortgagor and mortgagee. This agreement is urged as evidence of such a commitment. On cross-examination, appellee's assistant vice-president in charge of construction loans testified, as follows:

"Q. Do you have a loan agreement which is executed by the Akron Savings & Loan with a prospective borrower at the time a loan application is filed in addition to the mortgage note? A. A loan agreement?

"Q. Yes, as to how you are going to disburse. You made a statement that you are going to disburse on a written order of Mr. Hoffer. Now, do you have a statement between your association and the borrower to that effect? A. No.

"Q. You have no written agreement at all? A. That is correct.

"Q. Was there any oral statement made to Mr. Hoffer or Mr. Shifman in relation to the manner in which these proceeds would be disbursed? A. Yes, there was.

"Q. And what was that? A. At the time the papers were signed I explained to the borrowers the construction loan procedure of our company.

"Q. And what was that? A. I explained to them that the money will be held on an L. I. P. account to be disbursed on their written order.

"Q. What does L. I. P. mean? A. That is exhibit number three that you have. That is Loan In Process Account, and the money—construction money is held on there, and I explained to them that they must execute vouchers in order to draw money off of there, and I also, at that time, explained to them about our inspections, the inspections that we require, about the location survey that we require and so on.

"Q. Now, at this time, did you likewise indicate to them the total amount of funds available for construction? A. Yes.

"Q. And what, referring to plaintiff's exhibit three, did you indicate to be the amount available for construction? A. $15,680.15.

"Q. So that on the representation by you, after having executed plaintiff's exhibits one and two, you indicated that there would be $15,710.00? A. No, that's not right. I indicated there would be $15,680.15 available.

"Q. There would be that amount available for the construction of this home? A. That is right."

In *Yarborough,* two bases were asserted in support of the holding that nonobligatory future advances were subject to encumbrances attaching after the recording of a mortgage, but before the advances were made. The two bases were: (1) that a mortgage is to be regarded as security for a *debt,* and (2) that prejudice results to subsequent encumbrancers from lack of notice of the *obligatory* nature of the advances contemplated by the mortgage.

In *Spader* v. *Lawler* (1848), 17 Ohio 371, the court, at page 379, said:

"* * * it would seem nothing more than reasonable that it [the mortgage] should advise the public of the only really material thing for them to know—what is the amount it actually secures. What would be the legal nature of a mortgage placed upon record to secure all moneys hereafter to be advanced? It would not be a mortgage, because it would have nothing to secure. If nothing was ever advanced, no one would pretend that it was a mortgage. A mortgage is a security for the payment of money. If there was no money due there could be nothing to secure, and consequently no mortgage. If it be called a mortgage, what sort of a mortgage—a sleeping mortgage—a contingent mortgage, or a mortgage in abeyance—that is, something which in legal contemplation or expectation might, by the happening of some future event, become a mortgage. But what difference does it make by having a present named sum secured, if it can grow, increase or enlarge to any extent under the clause of future advances? Such a mortgage might well be denominated a mortgage *in esse*—without the possibility of issue extinct—as no man can tell what progeny of numerous debts it might subsequently gather under its motherly folds. * * *"

The oral agreement in the instant case, as described in the record, does not clearly obligate the mortgagee to

disburse definite and certain sums, under definite conditions, or in a particular manner. Indeed, the testimony of appellee's assistant vice-president belies the existence of a mandatory commitment by the mortgagee to make advances.

The record supports the conclusion that this was particularly evident in the procedure adopted by the mortgagee. Although the mortgagee credited the total amount of the mortgage loan to the "loan in process" account, and purportedly agreed to disburse funds from the account upon presentation of properly executed vouchers, this practice was not uniformly followed by the mortgagee. In one instance, even though funds existed to cover a voucher, the mortgagee failed, without apparent reason, for three months, to pay the materialman the amount due him for services performed on the premises. Such an instance negates the existence of a definite and certain obligatory procedure on appellee's part to advance funds from the "loan in process" account to pay construction costs.

Therefore, the oral agreement between mortgagor and mortgagee can not be deemed obligatory in the sense required in the *Yarborough case.*

As this court has concluded that the mortgage in the instant case did not contemplate definite and certain advances, it is not necessary to consider whether the oral agreement would constitute sufficient notice to subsequent encumbrancers. However, as this court said in *Yarborough*, at page 220, "the better practice would seem to be for the mortgage papers filed for public record to contain or refer to the obligation to advance, for such would furnish notice to the prospective mechanic or materialman that there is a prior lien in the amount specified * * *."

The next question for this court to determine is: Where the mortgagee is not under an obligation to advance the entire amount which appears on the face of its mortgage and for which the mortgage ostensibly stands as security, who, as between the mortgagee and a materialman, has priority and what is the extent of such priority?

Since the mortgage agreement in the instant case does not impose upon appellee the duty to make mandatory ad-

vances, determination of priority between appellee and appellant turns upon the application of Sections 1311.13 and 1311.14, Revised Code, as interpreted in *Wayne Bldg. & Loan Co. v. Yarborough, supra*. The fifth paragraph of the syllabus in *Yarborough* reads:

"If, under a mortgage contemplating advances for the construction of improvements upon the mortgaged premises and properly recorded prior to the reasonably apparent commencement of such construction, disbursements are made by the mortgagee to the mortgagor, which disbursements are not made in the manner prescribed in Section 1311.14, Revised Code, and are not actually used to pay for such construction, the lien secured by the mortgage is subsequent in priority to valid mechanics' liens arising out of such construction, or to other properly recorded mortgage liens attaching to the subject property, to the extent that such disbursements are made after the attaching of such mechanics' liens, or such other mortgage liens, unless the mortgagee was in fact obligated to make such advances."

It is undisputed that appellee did not make disbursements in the manner prescribed in Section 1311.14, Revised Code. By virtue of Section 1311.13, Revised Code, appellant's mechanic's lien is effective from the date on which the first materials were furnished for construction of the house. That date was November 10, 1961. Prior to November 10, 1961, appellee had distributed $799.85. With respect to that amount, appellee has priority over appellant. However, except for that amount appellee is subsequent to appellant with respect to the amount of appellant's lien.

Therefore, the trial court erred in concluding that appellee had a first lien on the premises to the full extent of the amount specified in the mortgage.

The judgment of the Court of Appeals is, therefore, reversed.

*Judgment reversed.*

TAFT, C. J., ZIMMERMAN, MATTHIAS, HERBERT, SCHNEIDER and BROWN, JJ., concur.