In re William KIRK, Laura
Kirk, Debtors.

William KIRK, et al., Plaintiffs,

v.

AMERITRUST COMPANY,
et al., Defendants,

and

Merchants Mortgage Corporation and
Charles W. Ewing Company, L.P.A.,
Additional Defendants on Cross-
Claims.

Bankruptcy No. 2–88–03772.
Adv. No. 2–89–0226.

United States Bankruptcy Court,
S.D. Ohio, E.D.

Sept. 16, 1991.

Charles W. Ewing, Columbus, Ohio, for plaintiffs.

Richard E. Stovall, Columbus, Ohio, for defendant Commercial Credit Services Corp.

Marcia Swigart Hoyt, Harris, McClellan, Binau & Cox, Columbus, Ohio, for defendant Ameritrust Co. Nat. Ass'n.

Gregory D. May, Porter, Wright, Morris & Arthur, Columbus, Ohio, for defendant Merchants Mortg. Corp.

Kathleen E. Hayes, Lerner, Sampson & Rothfuss, Cincinnati, Ohio, for TransOhio Sav. Bank.

Charles M. Caldwell, Office of the U.S. Trustee, Columbus, Ohio.

OPINION AND ORDER ON COMPLAINT
 TO DETERMINE VALIDITY AND
 EXTENT OF LIENS

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court upon a complaint filed by William and Laura Kirk, joint debtors in a Chapter 7 case pending before this Court. The complaint essentially seeks to avoid two judgment liens against the debtors' residential real property. The asserted basis for the avoidance is

that the property lacks sufficient value to support the judgment liens held by Ameritrust Company National Association ("Ameritrust") and Commercial Services Credit Corporation ("CSCC").

The Court has jurisdiction in this adversary proceeding under 28 U.S.C. § 1334 and the General Order of Reference entered in this district. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(O) which this Bankruptcy Judge may hear and determine.

## I. FACTUAL BACKGROUND

The operative facts underlying this dispute are either uncontested or are found by the Court as follows.

1. The debtors own real property located in Circleville, Ohio ("the Property"). At the time of the trial the Property was being marketed for sale.

2. The Property is subject to a first mortgage lien in favor of assignee The Federal Home Loan Mortgage Co. ("FHLMC"). As of April 16, 1990 the debtors owed $30,197.38 to FHLMC. The mortgage granted to secure that obligation was recorded on August 20, 1986 in favor of Merchants Mortgage Corporation and later assigned to FHLMC.

3. The Property is also subject to a second mortgage in favor of Charles W. Ewing, Co., L.P.A. ("Ewing"), counsel for these debtors. That mortgage secures the payment of a note in the principal amount of $50,000. The debtors executed the note and mortgage on October 20, 1986 and the mortgage was recorded on October 22, 1986. Consideration for the note is present and future legal services to be performed by Ewing. At the time the note was executed, the debtors owed Ewing approximately $15,000 for legal services. That obligation had risen to $43,533.75, plus interest, by July 26, 1988 when the debtors filed a petition under Chapter 7 of the Bankruptcy Code.

4. Ameritrust filed a certificate evidencing a judgment against the debtors in the amount of $144,368.21 plus interest. The date Ameritrust recorded its judgment is not known. However, the judgment apparently arose out of a 1987 civil action.

5. CSCC filed a certificate on May 23, 1988 evidencing a judgment against the debtors in the amount of $175,273. CSCC concedes that its judgment lien is subordinate to that of Ameritrust's.

6. The Property has an appraised going-concern value of $96,500 and a quick sale value of approximately $80,000.

7. Costs to sell the property include $7,631.50 for real estate commissions and associated costs. Approximately $1,000 for pro rated real estate taxes will also come ahead of the first mortgage.

8. The debtors each claim a homestead exemption of $5,000 pursuant to Ohio Revised Code § 2923.66(a)(1).

## II. ISSUES

The only issues before the Court are the amount of the obligation to Ewing which is secured by the second mortgage and the extent of that lien which is prior in time to the lien of Ameritrust.

## III. LEGAL DISCUSSION

The only basis upon which Ameritrust challenges the debtors' right to invalidate its lien is its assertion that the value of Ewing's mortgage lien cannot exceed the $15,000 in legal fees owed on the date the Ewing mortgage was recorded. As support for that assertion, Ameritrust relies upon the provisions of Ohio Revised Code § 5301.232. The relevant portion of that statute is as follows:

(A) Whether or not it secures any other debt or obligation, a mortgage may secure unpaid balances of loan advances made after the mortgage is delivered to the recorder for record, to the extent that the total unpaid loan indebtedness, exclusive of interest thereon, does not exceed the maximum amount of loan indebtedness which the mortgage states may be outstanding at any time. With

respect to such unpaid balances, division (B) of this section is applicable if the mortgage states, in substance or effect, that the parties thereto intend that the mortgage shall secure the same, the maximum amount of unpaid loan indebtedness, exclusive of interest thereon, which may be outstanding at any time, and contains at the beginning thereof the words *"Open-end mortgage."*

(B) A mortgage complying with division (A) of this section and securing unpaid balances of loan advances referred to in such division is a lien on the premises described therein from the time such mortgage is delivered to the recorder for record for the full amount of the total unpaid loan indebtedness, including the unpaid balances of such advances that are made under such mortgage, plus interest thereon, regardless of the time when such advances are made. If such an advance is made after the holder of the mortgage receives written notice of a lien or encumbrance on the mortgaged premises which is subordinate to the lien of the mortgage, and if such holder is not obligated to make such advance at the time such notice is received, then the lien of the mortgage for the unpaid balance of the advance so made is subordinate to such lien or encumbrance. If an advance is made after the holder of the mortgage receives written notice of work or labor performed or to be performed or machinery, material, or fuel furnished or to be furnished for the construction, alteration, repair, improvement, enhancement, or embellishment of any part of the mortgaged premises and if such holder is not obligated to make such advance at the time such notice is received, then the lien of the mortgage for the unpaid balance of the advance so made is subordinate to a valid mechanic's lien for the work or labor actually performed or machinery, material, or fuel actually furnished as specified in such notice. (Emphasis added.)

Ohio Rev.Code § 5301.232.

 Section 5301.232 sets forth rules for the relative priorities between the holder of a properly perfected open-end mortgage and subsequent lienors. Although the reported case law interpreting the statute deals with mechanics' lienors and with the nature of obligatory advances, the language of the statute is not so limited. It provides a mechanism by which a mortgage holder can maintain its priority as to subsequent advances. That mechanism requires the mortgage document to state that:

(1) the parties intend for the mortgage to secure future advances;

(2) the maximum amount, exclusive of interest, which may be outstanding at any one time; and

(3) language at the beginning of the document identifying it as an "Open-end Mortgage."

If the mortgage holder has fulfilled the conditions set forth above *and* its subsequent advances are obligatory, as defined under case law, those subsequent advances will maintain their priority over subsequent lienors, even if such lienors send the statutory notice provided for in Ohio Rev.Code § 5301.232(B). *See, Wayne Bldg. & Loan Co. v. Yarborough,* 11 Ohio St.2d 195, 228 N.E.2d 841 (1967) and *Colonial Mortgage Service Co. v. Southard,* 56 Ohio St.2d 347, 384 N.E.2d 250 (1978). If the subsequent advances are not obligatory and the lienor has sent the proper notice, the subsequent lien will be prior to the mortgage for advances made after the notice is received by the mortgagee.

 It is uncontested that the Ewing second mortgage is not identified as an open-end mortgage. There also is no evidence that Ameritrust sent any statutory notice. Careful reading of the mortgage document shows, however, that the parties intended it to secure future advances and the maximum amount which could be outstanding is fixed. The issue then is whether the lack of identification of the mortgage document as an "Open-end Mortgage" causes Ameritrust's subsequent lien to come ahead of Ewing's post-recordation subsequent advances of services.

The Court believes that a mortgagee seeking to maintain the priority of its mortgage lien for subsequent advances made under an open-end mortgage with respect to a subsequent lienor must fulfill all of the requirements set forth in Ohio Rev.Code

§ 5301.232(A). If the mortgage is not clearly identified as an open-end mortgage, the subsequent lienor will not have the necessary notice to enable it to protect its position by sending the statutory notice to the mortgagee. The penalty for not following the statute is a loss of priority for the mortgagee's subsequent advances over the lien of the subsequent lienor.

Based upon the foregoing, subsequent advances made by Ewing in excess of the $15,000 outstanding at the time of the recordation of the mortgage are not prior to the judgment lien of Ameritrust. Because the agreed-upon value of the Property is insufficient to support the first mortgage, $15,000 of the Ewing second mortgage and the entire Ameritrust judgment lien, the validity of the Ewing second mortgage for the subsequent advances, as between the debtors and Ewing, need not be determined by this Court.

Accordingly, the debtors' motion to avoid the lien of Ameritrust is denied consistent with the Court's findings and Ameritrust has a valid lien in the approximate amount of $32,671 minus accrued interest on the first and second mortgages. The lien of CSCC is valued at $0.

IT IS SO ORDERED.